## Nissley *v.* Pennsylvania Railroad Company, Appellant.

504

Argued January 10, 1969. Before BELL, C.J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

 reargument refused November 18, 1969.

George J. Miller, with him Harvey Bartle, III, and Dechert, Price & Rhoads, for appellant.

Arthur G. Raynes, with him Charles A. Lord, and Richter, Lord, Toll, Cavanaugh, McCarty & Raynes, for appellee.

OPINION BY MR. JUSTICE JONES, September 9, 1969:

On November 1, 1960, Kenneth N. Nissley, who was employed as a trainman by the Pennsylvania Railroad at its yards in Enola, Pennsylvania, wrenched his back while chasing a runaway box car. On May 24, 1961, Nissley died of aleukemic leukemia. The present action,[1] which was instituted against the Railroad by Nissley's widow as administratrix of his estate, is based on the theory that Nissley's back injury triggered the condition which resulted in his death. At trial the jury returned a verdict in favor of the plaintiff in the sum of $120,460. After the court below refused a motion for a new trial, the Railroad appealed from the judgment entered on the verdict.

The Railroad advances two reasons as to why the judgment should be set aside and a new trial ordered. First, the Railroad argues that the trial court committed reversible error in allowing an expert medical witness, whose identity was not revealed in answer to a timely interrogatory seeking the names of all medical

---

[1] Suit was brought under the provisions of the Federal Employers' Liability Act (45 U.S.C. §51 et seq.) and the Safety Appliance Act (45 U.S.C. §1 et seq.).

authorities whom the plaintiff had consulted, to testify for the plaintiff. Second, the Railroad maintains that the verdict was against the weight of the evidence. We need not consider this second issue, for we hold that the Railroad's first assertion is sufficient to justify the grant of a new trial.

Before trial, counsel for the respective parties entered into a medical exchange agreement under which the Railroad gave to the plaintiff the report of a pathologist it had engaged and the plaintiff delivered to the Railroad reports received from Nissley's two attending physicians. On October 1, 1965, the Railroad served upon plaintiff the following interrogatory: "State the name and address of each physician whom plaintiff or anyone acting on her behalf has *consulted* as to whether or not there is a causal connection between the accident referred to in the complaint and the decedent's death." (Emphasis added)

At a pre-trial conference held six weeks later, plaintiff's counsel agreed to answer this interrogatory before December 6. This he failed to do, and on December 21 he asked for more time to answer the interrogatory since he was still searching for an expert to testify about the causal connection between the accident and the decedent's death. Finally, on February 2, 1966— five days before the jury was sworn—plaintiff's counsel filed the following answer to the Railroad's interrogatory: "No answer required under P. R. C. P. 4011(d)."[2] The Railroad responded by filing pre-trial motions to compel an answer to the interrogatory or,

---

[2] Rule 4011(d) provides: "No discovery or inspection shall be permitted which . . . (d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses."

in the alternative, for a continuance of the case until an answer was filed. These motions were denied by the calendar judge and the case proceeded to trial. On the third day of trial, the plaintiff called Dr. John M. Mead as an expert witness. The Railroad moved that Dr. Mead be precluded from testifying because his identity had not been disclosed in answer to the interrogatory. This objection was overruled, and Dr. Mead was permitted to testify that there could have been a causal connection between decedent's back injury and his subsequent death from leukemia.

The several revolutions which have occurred in the field of procedure, insofar as they relate to problems of pre-trial discovery, have had as their principal focus the desire that a trial should be an inquiry into the facts of a case with each party in a position to examine the evidence upon which a decision will rest. We have moved away from what was described as "the sporting theory of justice" and have embraced a theory of wide-ranging and mutual discovery. "One advantage of discovery is the protection it gives the adversary against surprise evidence which can be proven false or which can be put in a truer and less damaging light if there is opportunity to investigate the matter and produce rebutting or qualifying facts."[3]

In the light of these principles, the specific provisions of the Pennsylvania Rules of Civil Procedure should be examined. Rule 4005(a) provides that "any party may file and serve upon any adverse party written interrogatories to be answered by the party served . . . who shall furnish such information as is available to the party. . . ." Rule 4007(a) more specifically states, "Any party may take the testimony

---

[3] James, Civil Procedure, at 183; see also: 6 Wigmore, Evidence, §1845 (1940).

of any person, including a party, for the purpose of discovery by deposition upon oral examination or written interrogatories of the identity and whereabouts of witnesses. . . ." The final provision which is relevant to this litigation is Rule 4011, which places a general limitation on all discovery. Rule 4011(d), upon which the plaintiff based his refusal to answer the Railroad's interrogatory, is set forth in footnote 2.

Two conclusions can be drawn from a study of these three rules. First, the Railroad was entitled to a list of all the plaintiff's expert medical *witnesses*.[4] Second, the Railroad's interrogatory was too broad in that it asked for a list of all medical experts whom the plaintiff had *consulted*. This is exactly the type of discovery which is condemned by Rule 4011(d).[5] However, we would be returning to the dark ages of the rules of discovery if we were to hold that the plaintiff could wait until the eleventh hour and use this defect as a means to conceal the identity of a surprise witness. The plaintiff had the means at her disposal to object to the overly-broad interrogatory. Rule 4005(b) states that a party may file objections to an interrogatory within ten days of its receipt. This the plaintiff failed to do; instead some six weeks after receipt of the interrogatory, she promised that she would answer the interrogatory. It was not until five days before trial that plaintiff objected to the interrogatory. Under these circumstances, the plaintiff waived any defect in the interrogatory. The calendar judge was in error in denying the Railroad's motion to compel the plaintiff to answer the interrogatory, and the trial judge

---

[4] See: *Henry v. Johnston*, 36 Pa. D. & C. 2d 523 (C. P. Mifflin, 1965); *Heller-Murray Co. v. Sharon Builders Supply Co.*, 33 Pa. D. & C. 2d 189 (Mercer, 1964); *Lewis v. Geisinger Medical Center*, 30 Pa. D. & C. 2d 32 (Montour, 1963).

[5] Cf. *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947).

compounded this error by allowing the surprise witness to testify.[6]

The element of surprise is particularly crucial given the nature of this case. It is agreed that a causal relationship between Nissley's accident and his death from leukemia was the principal issue for trial. In such a case the jury is confronted with complicated, often bewildering, medical testimony. Inevitably, the weight which jurymen give to conflicting testimony will reflect the apparent expertise of the witnesses. In such a case the credentials and qualifications of a witness will be matters of great import and any demonstrable discrepancies in the qualifications claimed by the witness will greatly affect his credibility. In such a case, therefore, it is of particular importance that the identity of expert witnesses be known in advance so that full examination of their qualifications may be made. This case is an excellent example of the need for such a rule, for Dr. Mead's theories are not accepted by the vast majority of the medical profession.[7]

The court en banc refused to grant a new trial because it concluded that Dr. Mead's testimony was relatively unpersuasive when compared with the testimony of the plaintiff's other medical expert and that the cross-examination of Dr. Mead was so effective that it was impossible to conceive of any alternative line of inquiry which would have been more effective. As

---

[6] Rule 4019 states: "(a) The court may, on motion, make an appropriate order if (1) a party wilfully fails to file answers or sufficient answers to written interrogatories served under Rule 4005 . . . (c) The court, when acting under Subdivision (a) of this rule, may make . . . (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or *prohibiting him from introducing in evidence designated . . . testimony* . . . ." (Emphasis added)

[7] Both of plaintiff's experts admitted that they knew of no medical authority who had expressed an opinion that a back injury could cause leukemia.

to the first point, we do not find Dr. Mead's testimony lacking in force given his apparent qualifications; certainly, taken together with the testimony of plaintiff's other expert, it lends added credence to an otherwise unusual conclusion. As to the second point, the court en banc has overlooked the crucial issue. What is important is not how effective the cross-examination was, but rather whether the Railroad was in a position to discredit the testimony of the plaintiff's expert on the grounds that he lacked the requisite background and knowledge to testify as an expert. Obviously, since the Railroad was not aware that Dr. Mead would testify, it was not in a position to challenge his qualifications as an expert.

This case aptly demonstrates that the integrity of the discovery rules can be preserved only if the rules are taken more seriously than they were in the lower court. The rule requiring a party to object to an improper interrogatory within ten days was included in the Rules of Civil Procedure for a purpose; that purpose would be defeated if we were to accept the lower court's apparent conclusion that the plaintiff's failure to follow this rule was not crucial under the facts of this case.

Judgment reversed. New trial granted.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the grant of a new trial although I do not agree with everything which is said in the majority Opinion. Moreover, I believe that Rule 4011(d), which provides that a party must give (when requested) the other party "information as to the identity or whereabouts of witnesses," should be amended (1) by changing the "or" to "and," and (2) by adding "and the names and whereabouts of every *expert* who was *consulted.*"

However, I would grant a new trial for an additional and more important reason. Plaintiff's two experts and defendant's one expert gave (as often happens) completely different opinions on the crucial question of causation, namely, whether the trauma, which resulted from decedent twisting his back when he stumbled, either caused or triggered the leukemia which resulted in decedent's death. However, the testimony of plaintiff's experts to prove causation, while technically meeting the standard of proof laid down in *Smith v. German*, 434 Pa. 47, 253 A. 2d 107, *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A. 2d 445, and *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 103 A. 2d 681, was so exceptionally weak and unsupported by any medical authorities that (a) a new trial should undoubtedly be given in the interest of Justice: *Clewell v. Pummer*, 388 Pa. 592, 599, 131 A. 2d 375, and (b) the denial of a new trial was a clear and palpable abuse of discretion: *Tomasek v. Monongahela Rwy. Co.*, 427 Pa. 371, 235 A. 2d 359.

For each of these reasons, I would grant a new trial.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I strenuously object to this Court's improvident sacrifice of the rights of the appellee-verdict winner, even though done in the ostensible furtherance of procedural liberality. The majority holds that the lower court should have compelled an answer to the defendant's interrogatory, even though that interrogatory was admittedly violative of Rule 4011(d) of the Pennsylvania Rules of Civil Procedure. The Rules of Procedure in certain terms preclude the revelation of the work product of the party's legal counsel, or other privileged information relating to liability aspects of the plaintiff's case. The basis upon which the pre-trial disclosure of the identity of expert witnesses is justified is to afford the opposing party adequate opportunity to prepare for cross-examination of witnesses who will ap-

pear against him at trial. Not all experts consulted are called as trial witnesses. To require that the identity of every expert consultant be disclosed would result in an unfair disadvantage to the opposing party and would place him in a position completely foreign to that contemplated by the Rules of Civil Procedure. For instance, after ascertaining the names of those to be called as witnesses at trial, the opposing party could then contact those consulted but not called to testify and possibly gain information prejudicial to the party originating the consultation. The majority recognizes this, and consistent with that realization, decries the interrogatory here at issue. Quite curiously, however, it reverses a fair verdict on the ground that the defective interrogatory should have been answered. The majority itself "makes sport" with the Rules of Civil Procedure by *compelling* an answer to an interrogatory which the Rules make unanswerable. In effect, the plaintiff's attorney is disciplined for not objecting to the interrogatory sooner. A waiver of the interrogatory's defect is created by judicial innovation.[1]

But, in the process of the majority's setting things straight, what happens to the plaintiff's verdict? Procedural fairness is, of course, essential but it cannot be allowed to cover the mistakes of counsel. Defense counsel could have, three days before trial, secured the names of the plaintiff's expert *witnesses* by amending its interrogatory. He did not even try to do so.

In summary then, the majority subverts and nullifies the clear policy of the Rules regarding the discovery of privileged information to foster a principle of waiver, whose existence is doubtful. The majority

---

[1] Rule 4005(b) of the Pennsylvania Rules of Civil Procedure provides that a party may file and serve written objections to interrogatories within ten days after their service. It is quite obvious, however, that the Rule makes no mention of a *waiver* of defects for failure to object to the interrogatory within ten days of its service.

slaps the hand of the plaintiff's counsel for making sport with procedure, itself ignores procedure, and takes away a verdict from the plaintiff in a case where liability is amply supported by the record. The question thus inevitably arises, "What are courts for?" The majority answers: "To ensure, at all costs, proper procedure." I dissent from its jurisprudence and from its conclusion that it has followed proper procedure. I would affirm.

Mr. Justice O'BRIEN and Mr. Justice ROBERTS join in this dissenting opinion.