454 A.2d 1054

**Norman A. SINDLER and Marylin Sindler, his wife**

**v.**

**Gilbert S. GOLDMAN, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Dec. 30, 1982.

Samuel H. Elkin, Pittsburgh, for appellant.

William S. Smith, Pittsburgh, for appellee.

Before PRICE,* BROSKY and MONTGOMERY, JJ.

PRICE, Judge:

This appeal from the grant of a new trial arises from an action in trespass. The original complaint consisted of two counts, the first a malpractice action by appellee, Marylin Sindler against appellant, Dr. Gilbert S. Goldman, and the second, an action for loss of consortium by appellee Norman Sindler against Dr. Goldman.

The case was tried before a jury, the Honorable Ralph H. Smith, Jr., presiding. The jury returned a verdict for Dr. Goldman on both counts on April 5, 1976. The Sindlers filed a Motion for New Trial which was granted by the lower court en banc (R.H. Smith, Jr. and Larsen, JJ.) on the basis that the verdict of the jury was so contrary to the evidence as to shock judicial conscience. The court did not consider the Sindlers' second allegation of error concerning the failure of appellant to follow a local court rule. Dr. Goldman appealed the new trial award to this court and we reversed and remanded for consideration of the second

* Died Jan. 30, 1983.

allegation of error. *See, Sindler v. Goldman,* 256 Pa.Superior Ct. 417, 389 A.2d 1192 (1978).[1]

On remand before the lower court *en banc* (R.H. Smith, Jr. and E.E. Narick, JJ.), the Sindler's motion for a new trial was granted by Order dated June 21, 1979 at 3641 October Term, 1972, on the basis that the trial judge had erred in allowing the appellant, Dr. Goldman to testify even though he had not complied with local Rule 212 of Allegheny County by filing a pretrial expert report. Dr. Goldman has again appealed the new trial award to this court.

The facts of the case are as follows: Mrs. Sindler consulted Dr. Goldman shortly before July 6, 1971 for treatment of a growth on the left side of the base of her neck. (N.T. 25). Upon his advice and recommendation, Mrs. Sindler underwent surgery at Montefiore Hospital on July 6, 1971 and the growth, an enlarged lymph node, was removed from the left side of the base of her neck. (N.T. 26, 27). The condition was diagnosed as chronic, nonspecific lymphadenitis. (N.T. 99). Mrs. Sindler was released from the hospital the same day but had to return to Dr. Goldman's office on July 8 to have a drain removed from the surgical wound. (N.T. 28). She complained of pain in her left arm during this visit but was advised that the pain would go away. No more pain-killing medication was prescribed for her. (N.T. 28, 29).

Mrs. Sindler continued to feel pain and she also began to lose mobility in the left arm. (N.T. 30–32). She made several return trips to Dr. Goldman's office between July 8, 1971 and May 24, 1972. (N.T. 28–30). Dissatisfied, Mrs. Sindler consulted other medical experts and it was thereby determined that there was a loss of function in the superior portion of the left trapezius muscle. It was also concluded that the left trapezius muscle, which is controlled by the spinal accessory nerve, had hollowed out or atrophied. (N.T. 105, 175). The spinal accessory nerve is located in

1. The Sindler's subsequent petition for Allowance of Appeal from the Superior Court Decision was denied by the Supreme Court on November 29, 1978 at No. 1727 Allocatur Docket.

that area upon which Dr. Goldman operated. (N.T. 106). Subsequently, Mr. and Mrs. Sindler brought this suit alleging negligence on the part of Dr. Goldman in performing the operation and in failing to subsequently repair the damage allegedly caused during the operation.

At trial Dr. Goldman testified on his own behalf. Appellees do not contend that Dr. Goldman should not have been allowed to testify at all; rather they challenge only the parts of Dr. Goldman's testimony that were expert in nature. Appellees, on the other hand, contend that it was proper for Dr. Goldman to testify as an expert considering the particular circumstances. The lower court did not agree with the appellant and ruled that it was reversible error and awarded a new trial.

A grant of a new trial is a matter within the sound discretion of the trial court. The lower court's grant of a new trial will not be disturbed on appeal "unless there has been a clear abuse of discretion or an error of law which necessarily controlled the grant of a new trial." *Crosbie v. Westinghouse Elevator Co.,* 297 Pa.Superior Ct. 304, 443 A.2d 849 (1982).[2] Therefore, appellant has the heavy burden of convincing this court that there is no doubt but that the lower court abused its discretion or committed an error of law by granting the appellees a new trial.

The meaning of the Local Rule 212 upon which the grant of a new trial was based, is not disputed. The rule provides that:

> c. Defendant, within fifteen (15) days after the time set for performance by the plaintiff under VI. A. and VI. B. hereof:
>
> 1. Shall serve upon all other parties a written statement containing:

.   .   .   .   .

**2.** *See also, Gilligan v. Shaw,* 441 Pa. 305, 272 A.2d 462 (1971); *Hilliard v. Anderson,* 440 Pa. 625, 271 A.2d 227 (1970); *Kralik v. Cromwell,* 435 Pa. 613, 258 A.2d 654 (1969); *Carl v. Kurtz,* 255 Pa.Superior Ct. 198, 386 A.2d 577 (1978).

d. The reports of any expert whose opinion will be offered in evidence at the time of trial. Such reports shall include the findings and conclusions of the expert.

.    .    .    .    .

e. Witnesses whose identities have not been revealed as provided in Paragraph ... VI. C. 1. c. and d., supra will not *under any circumstances whatsoever*, be permitted to testify at the subsequent trial of the case. (emphasis added)

Thus, accepting the literal meaning of the rule, Dr. Goldman should not have been allowed to testify as an expert witness. However, local rules are not always adhered to, nor need they be if there is a conflict between the local rule and a Pennsylvania Supreme Court rule, or if justice would be denied due to some procedural technicality.[3] While we agree that rigid application of local rules is not always proper, in this case we feel that the appellees' opportunity for a fair trial was thwarted by the trial judge's failure to adhere to the rule.

The purpose of the discovery rules is to prevent surprise and unfairness and to allow a trial on the merits. When expert testimony is involved, it is even more crucial that surprise be prevented, since the attorneys will not have the requisite knowledge of the subject with which to effectively rebut unexpected testimony. By allowing for early identification of expert witnesses and their conclusions, the opposing side can prepare to respond appropriately instead of trying to match years of expertise on the spot. Thus, the rule serves as more than a procedural technicality; it provides a shield to prevent the unfair advantage of having a surprise witness testify.[4]

3. *See, Budget Laundry Co. v. Munter,* 450 Pa. 13, 298 A.2d 55 (1972); *Coffey v. Faix,* 426 Pa. 421, 233 A.2d 229 (1967); *McKay v. Beatty,* 348 Pa. 286, 35 A.2d 264 (1944).

4. The Supreme Court of Pennsylvania apparently agrees with Local Rule 212 as evidenced by the adoption of Pa.R.C.P. § 4003.5 which codifies essentially the same principle. The rule provides that a party may through interrogatories require the identity of any expert witnesses and the substance of the expert's expected testimony. In

The Pennsylvania Supreme Court has recognized the importance of disclosing the identity of expert witnesses, and the necessity for trial courts to act in accordance with such discovery rules. In *Nissley v. Pennsylvania Railroad Company*, 435 Pa. 503, 259 A.2d 451 (1969), *cert. denied*, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813, (1970), the court overruled the trial court's decision to allow an expert to testify even though his identity had not been disclosed prior to trial. The court stated:

> In such a case the jury is confronted with complicated, often bewildering, medical testimony. Inevitably, the weight which jurymen give to conflicting testimony will reflect the apparent expertise of the witnesses.... In such a case, therefore, it is of particular importance that the identity of expert witnesses be known in advance so that full examination of their qualifications can be made.... This case aptly demonstrates that the integrity of the discovery rules can be preserved only if the rules are taken more seriously than they were in the lower court.

435 Pa. at 509–510, 259 A.2d at 454–455.

The courts have allowed witnesses to testify in past cases even though discovery rules had not been followed.[5] Indeed, we recognize that the preclusion of testimony is a drastic sanction.[6] It is important to note, however, that the rule itself provides unconditionally that testimony will be precluded in the event of non-compliance.[7] Thus, the issue

section (b) of the same rule the rule provides that if the latter section is not complied with, then the expert will "not be permitted to testify on behalf of the defaulting party at the trial of the action."

**5.** *See, Piekarski v. Club Overlook Estates, Inc.,* 281 Pa.Superior Ct. 162, 421 A.2d 1198 (1980); *Nowosielski v. Kryzosiak,* 280 Pa.Superior Ct. 243, 421 A.2d 703 (1980).

**6.** *See, Gill v. McGraw Electric Co.,* 264 Pa.Superior Ct. 368, 383, 399 A.2d 1095, 1102 (1979).

**7.** We agree with Judge Spaeth's dissenting opinion in *Nowosielski v. Kryzosiak,* 280 Pa.Superior Ct. 243, 249–50, 421 A.2d 703, 706 (1980) in which after concluding that *Gill v. McGraw Electric Co.,* 264 Pa.Supe-

14

becomes whether or not the appellees were denied their right to a fair trial by the trial judge's failure to preclude the expert testimony of Dr. Goldman in compliance with the rule.

■ The case of *Gill v. McGraw Electric Company*, 264 Pa.Superior Ct. 368, 399 A.2d 1095 (1979), involved similar circumstances. In *Gill*, a pretrial order was entered which provided that a party's expert reports had to be filed with the opponent before trial (thus similar to the mandate of Local Rule 212). The defendant in *Gill* entered the testimony of his experts over plaintiff's objection despite his failure to comply with the pretrial order. In addition, plaintiff's experts had been videotaped (as in the present case), and thus rebuttal was foreclosed. On appeal, we reversed and held that:

> [T]he two expert witnesses called by appellee should not have been permitted to testify.... Appellee offered no excuse for its violation of the pre-trial conference order. Given such a silent record, we will not speculate about what appellee's excuse might have been, if in fact it had an excuse..... However, we find it clear that appellee's conduct—both its violation of the pre-trial conference order and its failure to give counsel a copy of the laboratory report—was prejudicial to appellants, for it put appellants in the position of being unable to offer effective rebuttal—or any rebuttal—of appellee's experts. Appellee's conduct was especially prejudicial to appellants in view of the fact that appellants had offered only a video-tape deposition of their expert. It is hardly surprising that the jury rejected the opinion expressed on video-tape,

rior Ct. 368, 399 A.2d 1095 (1979) was not necessarily controlling he stated:

> Thus, the sanction of excluding the witness's testimony was not discretionary, as in *Gill*, but mandatory, required in all cases and "under any circumstances whatsoever." *Gill*, therefore, is inapposite, and by relying on it, the majority has rewritten the local rule and transformed a mandatory sanction into a discretionary one.... [W]e should not rewrite the rule but should require the lower court to apply it as the lower court has written it. Since here the lower court failed to apply its own rule, its judgment should be reversed and appellants granted a new trial.

given the contrary opinion expressed by two experts who testified in person, and who were unrebutted.

264 Pa.Superior Ct. 368, 382–83, 399 A.2d 1095, 1102–03.[8] Thus, the *Gill* case makes it clear that the admission of testimony over the objection that a pre-trial order was not complied with can lead to the inability to afford a fair trial.

As in *Gill*, appellant does not offer any reason or excuse for his failure to comply with the rule. Instead he relies on the nature of the circumstances in the case.[9] Appellant argues that appellees had the opportunity to discover the opinions and conclusions of Dr. Goldman during a pre-trial deposition. At the deposition, Dr. Goldman was specifically advised by his attorneys not to answer particular questions or to offer his opinion on certain matters. It is undisputed that Dr. Goldman's testimony at trial consisted of opinions as to questions which he had earlier refused to answer. Thus appellees had attempted to determine Dr. Goldman's expert opinions and were thwarted in their efforts.[10] They could have reasonably concluded that he was not going to act as an expert witness at trial, due to

8. Also, in *Gill*, we held that there are four factors which should be considered when deciding whether or not a witness should be precluded for a failure to comply with pre-trial orders. Although the present case does not involve the violation of a pre-trial order, the factors specified can be of some aid in consideration. They are: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, (4) bad faith of [sic] willfullness in failing to comply with the court's order. 264 Pa.Superior Ct. 368, 382, 399 A.2d 1095, 1102 (1979). We are satisfied that these four factors weigh in appellee's favor.

9. The appellants make much of the fact that the appellees had introduced parts of Dr. Goldman's deposed testimony in making their own case-in-chief. We agree with appellees, however, that their use of this testimony consisted only of factual matters and did not involve any testimony that could be considered to be expert in nature.

10. Although appellant correctly argues that appellees could have asked for sanctions in order to try to get answers to their questions, their failure to do so was reasonable. They had no reason to suspect that Dr. Goldman would be testifying as an expert witness due to the

appellant's action in filing an expert report of another doctor, but not for Dr. Goldman.[11] Considering this, along with the fact that appellees' experts were not present at trial but rather had been presented through videotape, and thus could not aid in rebuttal, (as in *Gill, supra*) we find that appellees were denied the opportunity for effective rebuttal.

Finally, we do not agree with appellant's argument that even if an error was made in admitting the testimony, it was harmless and could not warrant the grant of a new trial. As Dr. Goldman was the only witness to testify in defense, his testimony can not be classified as anything other than critical. Without his expert testimony, the jury would have been more likely to accept that of the appellees' experts, since it would have been uncontradicted. Thus we cannot say that the evidence did not affect the outcome of the case, and consequently we do not accept appellant's final contention.

Therefore, the order of the trial court granting a new trial is affirmed.

appellant's failure to include Dr. Goldman's name in the pretrial report concerning expert witnesses, and thus the answers would not have seemed crucial.

**11.** The other doctor, for whom an expert report was filed, was not called to testify at trial.