487 A.2d 1340

**Walter KAMINSKI and Lisa Kaminski, his wife**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 1984.

Filed Feb. 8, 1985.

Susan M. Danielski, Philadelphia, for appellant.

Lee C. Krause, Honesdale, for appellees.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant-insurer contends that the lower court erred in permitting two expert witnesses to testify on behalf of appellees-insureds with respect to the cause and origin of the fire in question when those experts were not identified in appellees' answers to interrogatories and were not identified as appellees' expert witnesses until the sixth day of trial. We agree and, accordingly, reverse and remand for a new trial.

Following a May 5, 1980 fire which damages and/or destroyed their house and its contents, appellees, Mr. and Mrs. Kaminski, submitted a claim in the amount of $89,-593.20 to appellant, Employers Mutual Casualty Company, pursuant to their homeowners insurance policy. Because appellant refused to make any insurance payments, appellees filed a complaint on December 22, 1980, alleging breach of contract and seeking damages under the policy. Appellant responded by filing an answer and new matter on January 29, 1981; appellees then filed an answer to appellant's new matter on February 9, 1981. During discovery, appellant propounded interrogatories which appellees answered on May 7, 1981. Both parties submitted pre-trial memoranda and, on July 9, 1981, the trial court, per Judge Davis, specially presiding, held a pre-trial conference.

Jury trial commenced on July 21, 1981, with Judge Williams specially presiding, and continued to July 24; after an approximate one-week adjournment period, it recommenced on August 3 and concluded on August 6. In establishing their case, appellees first presented the testimony of Mr. Kaminski regarding appellees' activities on the day of the fire, as follows: On Sunday, May 4, 1980, at approximately 8:00 a.m. appellees left their residence located on Route 652, between Beach Lake and Narrowsburg, Damascus Township, Wayne County, to go to work in Monticello, New York, approximately a 45-minute drive. Mrs. Kaminski is a bookkeeper at Kutshers Country Club in Monticello; Mr. Kaminski is a real estate salesman for E. & A. Mason Real Estate in Monticello. At 5:00 p.m., appellees left work and returned home, arriving at 5:45. At 6:15, appellees left their home and drove to Kutsher's Country Club for dinner and a show. They stayed until approximately 2:00 a.m. the next morning. They then left the club and, because Mrs. Kaminski wanted something to eat, they went to a restaurant in Monticello and stayed there approximately one hour. At 3:30 a.m., they left the restaurant and stayed in the parking lot for a while because Mr. Kaminski fell asleep. At approximately 4:30 a.m., appellees started to drive home;

however, after driving about three-quarters of a mile, Mr. Kaminski was too tired to continue so they stopped on the side of the road and Mr. Kaminski again fell asleep. At approximately 6:00 a.m., he was awakened by the sun. Because appellees were approximately 45–50 minutes drive from their home and had to be at work by 9:00 a.m., they drove straight to Mr. Kaminski's real estate office to freshen up and then went to their respective offices. At the end of the day, appellees left work early and, upon arriving home, saw the burned remains of their residence. The fire was estimated to have broken out at approximately 2:00 a.m. on Monday, May 5, 1980. (N.T. July 22, 1981 at 27–28, 44–46; July 23, 1981 at 96–111). Appellees each testified as to the various items lost in the fire and their values. (*Id.* at 38–47). They concluded their case-in-chief by presenting the expert testimony of Robert Jones, a professional building estimator, and Charles Catanzaro, a public insurance adjuster. Both of these witnesses work for Dalan Adjustment Company, which had been retained by appellees to prepare their insurance claim, and they testified as to the estimated values and replacements costs of appellees' destroyed property. (N.T. July 23, 1981 at 52–79).

In defense, appellant presented the testimony of several experts. Alfred Crosby, Chief of the Beach Lake Volunteer Fire Department, testified that the fire in question had been difficult to extinguish and therefore opined that some type of liquid material, such as gasoline, turpentine or fuel oil, had been applied to the basement and first floor of appellees' home. He also based this opinion on the "tunnellike" burnt patterns on the flooring. (*Id.* at 126–27). Alfred H. Thumann, assistant fire chief of the Beach Lake Fire Department, also testified that the fire had been difficult to extinguish with water and would flare up repeatedly. He therefore opined that there had been some highly flammable substance in the basement other than paper or wood. (*Id.* at 141–43). Michael O'Day, a Pennsylvania State policeman and alternate fire marshall for Wayne County, testified that his job as a state police fire marshall was to investigate

the cause and origin of fires of suspicious nature and gave the following opinions: (1) an oil burner had been carefully removed from the basement furnace of appellees' home prior to the fire; (2) the point of origin of the fire was the basement stairway; (3) the fire had been caused by placing some type of flammable liquid on the floor from the kitchen into the living room, down the basement stairway, and upstairs to the second floor; (4) the ignition source of the fire was the oil burner motor which had been set to the thermostat like a timing device, *i.e.*, when the temperature hit a certain degree, the thermostat called for heat, thereby automatically igniting the oil burner, which started the basement stairway on fire and rapidly moved upstairs from there; (5) the whole house was intended to be burned to the ground. (*Id.* at 150–53, 156–203). Frederick Blum, a consulting engineer in the field of investigation of fires involving malfunctioning equipment, testified as to the condition of the oil burner both before and after the fire occurred. (N.T. July 24, 1981 at 284–93). Robert Haycock, a senior fire investigator with UBA Fire Investigators in Harrisburg and a state police fire marshall, gave his opinion that, because of the burning patterns or "alligatoring effect" on the wood floors of appellees' home after the fire, the fire was caused by the ignition of a flammable liquid and that such low floor burnout throughout the entire structure was not common with accidental fires. (*Id.* at 302–10). He also ruled out the possibility of an electrical fire because of the extreme burning throughout the entire building and because the flooring above the electrical panel was still intact, stating that an electrical fire starts from a smoldering effect. (*Id.* at 337). Mr. Kaminski, called to the stand by appellant as of cross, testified that appellees' separately filed 1980 federal income tax returns reported respective gross incomes of $4729 and $8475. (N.T. August 3, 1981 at 381–83). He also testified as to appellees' various earnings and expenses. (*Id.* at 383–405). Appellant's last witness, Edward Gieda, a home building-remodeling and damage appraiser, testified as to replacement costs for appellees' home (*Id.* at 408–14).

Appellees responded on rebuttal with the testimony of two expert witnesses. Robert Jennings, a photographer, county coroner and chief deputy for Wayne County, testified that, in his opinion, no accelerants or flammable liquids had been poured on the stairways of appellees' home and that the fire was not incendiary. (N.T. August 4, 1981 at 510). Thomas Evans, electrical inspector for the City of Scranton and a member of the Arson Task Force, testified: "My opinion is definitely an electrical fire." (*Id.* at 524).

In surrebuttal, appellant again put Michael O'Day on the stand. O'Day disagreed with Jennings and Evans as to the electrical origin of the fire because the fuse box was intact and there was no evidence of melting. (N.T. August 5, 1981 at 549–68). On cross, however, he admitted that he was not an electrician. (*Id.* at 561–62).

At the conclusion of the trial, the jury, finding that the fire was not incendiary and that there was no fraud, rendered a verdict in appellees' favor for $89,500.00 in damages.[1]

Appellant subsequently filed motions for a new trial or for judgment n.o.v. Following argument, these motions were denied on December 13, 1982 by Judge Conway. On January 7, 1983, appellant filed the instant appeal. The lower court then ordered appellant to file of record a Pa.R.A.P. 1925(b) concise statement of the matters complained of on appeal; appellant complied with this order. On March 25, 1983, appellant filed a praecipe to enter judgment *nunc pro tunc* on the jury verdict in appellees' favor pursuant to Pa.R.Civ.P. 1039.[2]

■ Appellant contends that the rebuttal testimony of Jennings and Evans should not have been admitted because

1. The damages award was comprised of the following elements: dwelling, $55,000.00; personal property, $27,500.00; and living expenses, $7,000.00.

2. At the time the notice of appeal was filed, no judgment had been entered, only a verdict; therefore, this Court did not have jurisdiction. However, once judgment was subsequently entered on March 25, 1983, Superior Court jurisdiction was perfected. *See* Pa.R.A.P. 905(a); *Minich v. City of Sharon*, 325 Pa.Superior Ct. 178, 472 A.2d 706 (1984).

appellees failed to disclose the identities of these expert witnesses during discovery. Pa.R.Civ.P. 4003.5 provides that:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) *A party may through interrogatories require*

(a) *any other party to identify each person whom the other party expects to call as an expert witness at trial* and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

\*       \*       \*       \*       \*       \*

(b) *If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action.* However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

(Emphasis added). The rule embodied in subsection (b) above is restated in Rule 4019, entitled "Sanctions", as follows:

(i) A witness whose identity has not been revealed as provided in this chapter *shall not be permitted to testify* on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond

the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.Civ.P. 4019(i) (emphasis added). Thus, the rule is one of mandatory preclusion at trial of the testimony of undisclosed expert witnesses in the absence of extenuating circumstances. *See Sindler v. Goldman,* 309 Pa.Superior Ct. 7, 14, 454 A.2d 1054, 1057 (1982) (Local Rule 212, which embodies the same rule codified in Pa.R.Civ.P. 4003.5, "provides unconditionally that testimony will be precluded in the event of noncompliance.").[3] *See also Long v. C.M.C. Equipment Rental, Inc.,* 70 D. & C.2d 403 (Philadelphia Co.1975); *Peace v. Hess,* 67 D. & C.2d 230 (Lancaster Co.1974). The rationale for these discovery rules has been set forth by this Court on several occasions. In *Catina v. Maree,* 272 Pa.Superior Ct. 247, 259–60, 415 A.2d 413, 420 (1979), *rev'd on other grounds,* 498 Pa. 443, 447 A.2d 228 (1982), we stated:

The importance of a party having adequate and accurate information on the eyewitnesses to be called by an adverse party, is of course, manifest. If the witness' trial

---

3. In *Sindler,* we also noted that the following four factors specified in *Gill v. McGraw Electric Company,* 264 Pa.Superior Ct. 368, 382, 399 A.2d 1095, 1102 (1979) (*en banc* ), "[could] be of some aid" in considering whether or not a witness should be precluded for failure to comply with discovery rules even though *Gill* involved the violation of a pre-trial order:

    (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified,

    (2) the ability of that party to cure the prejudice,

    (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court,

    (4) bad faith of [sic] willfullness in failing to comply with the court's order.

309 Pa.Superior Ct. at 15 n. 8, 454 A.2d at 1058 n. 8. Here, as in *Sindler,* we find that these factors also mitigate in favor of preclusion.

Additionally, we note that *Gill* was decided prior to the effective date of Pa.R.Civ.P. 4019(i) (effective April 16, 1979) and therefore followed the abuse of discretion standard applied in such pre-Rule cases. *See Saks v. Jeanes Hospital,* 268 Pa.Superior Ct. 578, 408 A.2d 1153 (1979). Here, however, the case arose after Rule 4019(i) became effective and is therefore controlled by the mandatory preclusion rule. Accordingly, we find the applicability of *Gill* to the instant case questionable.

testimony is damaging to the uninformed party, he is subject to the vagaries of surprise and attendant detriment in the eyes of the jury; while if the witness is in possession of facts favorable to the uninformed party, the latter is deprived of potentially crucial information.

And in *Sindler v. Goldman, supra,* 309 Pa.Superior Ct. at 12, 454 A.2d at 1056, we reiterated:

The purpose of the discovery rules is to prevent surprise and unfairness and to allow a trial on the merits. When expert testimony is involved, it is even more crucial that surprise be prevented, since the attorneys will not have the requisite knowledge of the subject on which to effectively rebut unexpected testimony. By allowing for early identity of expert witnesses and their conclusions, the opposing side can prepare to respond appropriately instead of trying to match years of expertise on the spot. Thus, the rule serves as more than a procedural technicality; it provides a shield to prevent the unfair advantage of having a surprise witness testify.

(Footnote omitted).[4]

■ In the instant case, appellant propounded written interrogatories which clearly requested, *inter alia,* the names of the expert witnesses who were expected to testify on appellees' behalf. *See* Defendant's Interrogatories Nos. 12–14. In response, appellees answered: "All persons listed in the Dalan Adjustment Corporation report and adjusters of that company." *See* Plaintiffs' Answer to Defendant's Interrogatory No. 12. Although Jones and Cantanzaro were listed in the Dalan Adjustment Corporation report, Jennings and Evans were neither listed in that report nor identified anywhere in appellees' answers. Therefore, under the discovery rules, Jennings and Evans should have been precluded from testifying at trial unless extenuating

4. *See also Little v. Sebastion,* 50 D. & C.2d 761, 766 (Lebanon Co.1967) ("[T]he objects of a proper discovery procedure are to first, narrow the issues; second, obtain evidence to be used at the trial of the issues; third, secure information as to the existence and scope of evidence that may be used at the trial; and fourth, to obtain the necessary information to prepare proper pleadings.").

circumstances existed for appellees' nondisclosure. *See* Pa. R.Civ.P. 4003.5(b) and 4019(i).

Appellees contend, however, that there were extenuating circumstances because the pleadings raised only the defense of misrepresentation or false swearing and did *not* raise the defense of arson. They therefore argue that because they did not contemplate an arson defense at the onset of the trial, they sought rebuttal experts on the issue of the cause and origin of the fire after the trial was underway only when it became apparent that the issue of arson was becoming the thrust of appellant's defense. The lower court, in allowing Jennings and Evans to testify over appellant's objections, apparently agreed. *See* N.T. August 4, 1981 at 466–67.

We reject appellees' argument because their claim of ignorance of the arson defense prior to trial is controverted by the record. In its Answer to the Complaint, appellant invoked the "Concealment or Fraud" defense provided for in the insurance policy, and averred in New Matter the following:

13. Defendant avers that the policy of insurance sued upon contains, inter alia, the following provisions:

Concealment or Fraud. We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

14. The defendant avers that subsequent to the fire which occurred on or about May 5, 1980 and *which fire defendant avers was incendiary in origin,* plaintiffs furnished to defendant a document purporting to be a Sworn Statement in Proof of Loss wherein plaintiffs averred, declared and represented that the cause and origin of said loss was "fire" and that *the said loss did not originate by any act, design or procurement on the part of plaintiffs.* A true and correct copy of said document purporting to be a Sworn Statement in Proof of Loss is attached hereto, and marked as Exhibit "A", and made a part hereof.

15. The defendant further avers that the averments, declarations and representations referred to in paragraph fourteen (14) hereof related to material facts and circumstances concerning the insurance in question, the subject thereof and the interest of the plaintiffs therein.

16. The defendant further avers that *plaintiffs,* in such aforesaid document purporting to be a Sworn Statement of Proof of Loss, *did, under oath, willfully, deliberately and maliciously with intent to defraud the defendant, conceal the true origin and cause of the fire.*

17. Defendant further avers that plaintiffs did on July 15, 1980, under oath, willfully, maliciously and with intent to defraud the defendant, conceal the true origin and cause of said fire, when, in fact, *such origin and cause was well known to them.*

(Emphasis added). In their Answer to Appellant's New Matter, appellees averred the following:

14. Paragraph 14 is admitted in part and denied in part. That the *plaintiffs do not of their own personal knowledge have any information or belief as to the nature or origin of the fire* and therefore by implication this part of paragraph 14 must be denied and proof of the same is demanded at trial. As to the plaintiffs filing a proof of loss indication that the origin of the loss was a fire and *that it did not originate by any act, desire or procurement on their part,* this document speaks for itself and therefore Exhibit A is admitted as per the statements contained therein.

\*     \*     \*     \*     \*     \*

17. Paragraph 17 is denied and it is specifically averred that the *plaintiffs did not know nor intend to defraud or conceal the true origin of the fire,* therefore, strict proof of paragraph 17 is demanded at trial.

(Emphasis added). We think it clear from these pleadings that both parties were put on notice and understood that the defense of arson was raised and would be litigated. Although arson is not expressly mentioned in appellant's New Matter, at trial, defense counsel explained the reasons

for the formulation of the above paragraphs in appellant's New Matter:

MR. BELZ [Defense Counsel]: ... (In Chambers) ... This lawsuit brought by the Plaintiffs against the Employers Mutual Casualty Company is an action for a breach of an insurance contract. The Defendant can only be found liable to the Plaintiffs under the provisions of that contract, and can avoid liability only by showing a breach of a contractual provision of the policy. The provisions of the contract of insurance in question, as in the case of the provisions required of all fire insurance policies by statute in Pennsylvania under 40 P.S. Section 636, do not include a provision expressly stating that no payment will be made to an insured who intentionally burns his property, or for arson by an insured.

Rather, the policy in this action, and the fire policies by statute in Pennsylvania, provide that coverage is not provided for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to the insurance. This is the provision in the contract, and by statute, under which an insurer can defend a case on the grounds that the insured intentionally set the fire for which he is making a claim.

Accordingly, in order to defend a claim under the contractual provisions of the policy, the insurer must aver that the insured concealed and misrepresented in the proof of loss and/or the oral examination under oath, that the fire did not originate by any act, design or procurement on the part of the insured and thereby, by necessary implication, that the insureds intentionally set the fire.

The fact that an insured sets a fire by his and/or her act, design or procurement, is not a defense itself, but only when pled in the context of the concealment and misrepresentation provisions. The ultimate fact of proof is the concealment or misrepresentation of the arson or the incendiary fire caused by the act, design or procurement of the insured. That is the ultimate fact, and the

only fact that has been pled in this action in the new matter.

(N.T. August 4, 1981 at 443–44). We find this explanation reasonable. In *Greenberg v. Aetna Insurance Co.,* 427 Pa. 494, 235 A.2d 582 (1967), the insured sought to recover under two separate fire insurance policies for losses resulting from a fire in the shopping center where he owned and operated a drug store. In their answers to the complaint, the defendant-insurance companies denied liability on the contracts because the fire "was the result of incendiarism, a fact well known to the plaintiff who participated therein, and ... such participation and failure to disclose this information was the result of concealment and misrepresentation of the plaintiff thereby voiding the said policy." Although the sufficiency of the pleadings was not an issue in *Greenberg,* we note that, at trial, evidence was admitted from which the jury could infer that the fire involved was of an incendiary nature, and that plaintiff had arranged for arsonists to set the fire. Admittedly, the pleading in *Greenberg* more explicitly alleges the plaintiff's participation in the fire; however, we believe that the instant pleadings raise the same allegation by clear implication.

Even assuming that the pleadings are ambiguous, however, appellant's pre-trial memorandum and the transcript of the pre-trial conference clearly demonstrate that appellees were aware of the arson defense prior to trial. In appellant's July 3, 1981 pre-trial memorandum, appellant stated, under "Summary of Legal Issues", that:

(a) Defendant's burden of proving that the *insureds participated in or caused the fire to be set* is controlled by the burden of proof in civil cases or preponderance of the evidence, as opposed to the standard of proof in criminal cases.

(Defendant's Pre-Trial Memorandum at 5). At the July 9, 1981 pre-trial conference, in the presence of appellees' counsel and the court, appellant's defense counsel, in requesting a continuance because his principal expert witness would be out of the country from July 17 to August 3, stated: "he is

my chief expert to determine that the fire is arson." (N.T. Pre-trial Conference, July 9, 1981 at 2). Additionally, at this conference, the following exchange occurred:

THE COURT: And, your defense is that you are not liable because the owners or their agents or representatives were responsible for the fire?

MR. BELZ [Defense Counsel]: Yes, Your Honor.

(N.T. Pre-trial Conference, July 9, 1981 at 3). Appellees' counsel at the pre-trial conference also recognized that arson was a defense which would be testified to at trial, as the following excerpt indicates:

MR. KRAUSE [Plaintiffs' Counsel]: Your Honor, the only legal question that I would raise at this time in anticipation of testimony. I would like it clearly understood that the policy would still be in effect and still be a binding obligation if there was arson. The only time and the only defense that I believe is being set forth is the policy Holder or his Agents committed the arson.

THE COURT: I understood that was your contention.

MR. KRAUSE [Plaintiffs' Counsel]: To carry my objection, which I anticipate is that Attorney Belz [Defense Counsel] does not produce or prove my client's involvement in the arson, but merely puts testimony on concerning arson, I am concerned very much as to the effect that would have on a jury.

THE COURT: Do you disagree with him?

MR. BELZ [Defense Counsel]: Yes, Your Honor, and I expect to prove arson, Number One, and after I prove arson I can then proceed to tie in the insured, to either having the fire set intentionally or having it set by someone else or having knowledge by whom it was set and not disclosing that information to the Insurance Company, but I have to prove arson in my case, Number One.

(N.T. Pre-trial Conference, July 9, 1981 at 4).

Thus, even if appellees were not put on notice of the arson defense by the pleadings, they certainly knew of the defense for at least two weeks prior to the commencement

of trial. We also note that the record is devoid of any indication that appellees' counsel was surprised by, or objected to, the arson references in the pre-trial memorandum or at the pre-trial conference.

Although it is true that the pre-trial memorandum was filed and the pre-trial conference occurred subsequent to the interrogatories, Pa.R.Civ.P. 4007.4 imposes upon a responding party a duty seasonably to supplement his responses to discovery requests:

(1) *A party is under a duty seasonably to supplement his response with respect to any question directly addressed to* the identity and location of persons having knowledge of discoverable matters and *the identity of each person expected to be called as an expert witness at trial* the subject matter on which he is expected to testify and the substance of his testimony as provided in Rule 4003.5(a)(1).

(2) A party or an expert witness is under a duty seasonably to amend a prior response if he obtains information upon the basis of which

(a) he knows that the response was incorrect when made, or

(b) he knows that the response though correct when made is no longer true.

(Emphasis added). The explanatory note to Rule 4007.4 further states that:

The prior Rules contained no provisions imposing a continuing obligation on an answering party to supplement his responses to interrogatories or oral depositions if he becomes aware of subsequent facts which make his prior answers incorrect when made or no longer true in the light of new circumstances.

*Rule 4007.4 is adapted from Fed.R.Civ.P. 26(e) to provide such an automatic obligation. The automatic obligation is limited to (a) disclosure by a party of the identity and location of* additional persons having knowledge of discoverable facts and the identity of *persons expected to be called at trial as expert witnesses,*

and (b) amendment of a prior answer if a party or expert witness obtained information on the basis of which he knows that the original response was incorrect, or, if correct when originally made, is no longer true. Additional obligations to supplement may be imposed by (1) an order of court; (2) an agreement of the parties; or (3) supplemental interrogatories.

(Emphasis added). *See Royster v. McGowen Ford, Inc.*, 294 Pa.Superior Ct. 160, 167 n. 4, 439 A.2d 799, 803 n. 4 (1982) (even though initial expert interrogatories were possibly immature, party still required to answer and, also, under Rule 4007.4, party had duty seasonably to supplement responses); *Crawford v. Chambersburg Hospital*, 18 D. & C.3d 121, 127–30 (Franklin Co. 1980) (under Rule 4007.4, supplemental responses should be supplied as trial strategy develops).

Accordingly, we find that appellees had no excuse for failing to prepare for the arson defense prior to trial and for failing to disclose the identities of their expert witnesses on the issue of the cause and origin of the fire. Although the record does not definitively reveal exactly when Jennings and Evans were considered by appellees to be possible expert witnesses for trial, appellees indicate that Jennings was retained on July 23, 1981, and Evans was retained on or before August 1, 1981. Thus, Jennings and Evans were presumably retained after trial was underway. However, we find it hard to believe that appellees would have waited until after the commencement of trial to retain expert witnesses to rebut the arson defense when the record demonstrates that they had clear notice of such a defense well in advance of trial. *See, e.g., Crawford v. Chambersburg Hospital, supra* at 131. Moreover, we find a disturbing deliberation in the fact that the identities of Jennings and Evans were not disclosed to appellant's counsel and the trial court until August 4, 1981, the sixth day of trial, just immediately before they were to testify as rebuttal witness-

es.[5] Therefore, we cannot allow a party to circumvent the valid purposes of the discovery rules by late retention of expert witnesses which the party then excuses under the guise of ignorance or surprise regarding opposing party's case.

Under these circumstances, we find that there were no extenuating circumstances justifying appellees' failure to disclose the identities of Jennings and Evans until the sixth day of trial (and the second day after a one-week adjournment period). Thus, we hold that the testimony of these expert witnesses should have been precluded at trial pursuant to Pa.R.Civ.P. 4003.5(b) and 4019(i).[6] *See Nissley v. Pennsylvania Railroad Company*, 435 Pa. 503, 259 A.2d 451 (1969), *cert. denied*, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970) (new trial granted because trial court erroneously allowed testimony of expert medical witness whose identity was not revealed in answer to interrogatory); *Sindler v. Goldman, supra* (allowing defendant doctor in malpractice action to testify in expert capacity even though he failed to comply with local rule requiring pre-trial expert report denied plaintiffs opportunity for effective rebuttal and right to a fair trial); *Moore v. Howard P. Foley Co.*, 235 Pa.Superior Ct. 310, 340 A.2d 519 (1975) (new trial granted because trial court erroneously allowed

5. Although there is some lower court authority for holding that the identity of an expert rebuttal witness need not be disclosed in advance of trial because the necessity for calling such witnesses may not be determinable until after the other party has presented its case-in-chief, *see Fidler v. Wood Chips, Inc.* 11 D. & C.3d 778 (Clinton Co.1979), we need not decide that issue here. The court in *Fidler* distinguished the situation in which the testimony presented by the plaintiffs in rebuttal more properly belonged in their case-in-chief. *Id.* at 780. We believe that the instant case is an example of the latter situation in light of the scanty expert testimony presented in appellees' case-in-chief and appellees' pre-trial awareness of appellant's defense.

6. The lower court and appellees rely on the fact that appellant did not request a continuance at the trial. However, we note that the discovery rules authorize the court to "grant a continuance or other appropriate relief" only "if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party." Pa.R.Civ.P. 4003.5(b) and 4019(i). Having found no such extenuating circumstances in the instant case, such a request for a continuance would have been fruitless.

doctor to testify as expert witness where identity of doctor was not disclosed in plaintiff's answer to defendant's interrogatories and defendant did not learn of it until the first day of trial); *McClain v. Carney*, 19 D. & C.3d 527 (Wyoming Co.1981) (where plaintiff fails to list known witness in response to interrogatories or in pre-trial memorandum, Rule 4019(i) requires that the witness' testimony at trial be stricken because under the new discovery rules the court no longer has the discretion to allow a witness to testify whose identity and role have not been previously disclosed to opposing counsel); and *Philadelphia Electric Company v. Nuclear Energy Liability-Property Insurance Association*, 10 D. & C.3d 340 (Philadelphia Co.1979) (under discovery rules, sanction for failure to disclose identity of expert in answer to interrogatories either upon initial inquiry or seasonably after duty to disclose arises, is barring of undisclosed expert from testifying at trial). *But see Emerick v. Carson*, 325 Pa.Superior Ct. 308, 472 A.2d 1133 (1984) (trial court correctly allowed defendant's expert witness to testify even though witness's identity was not disclosed in answers to interrogatories and only provided to plaintiffs on the day jury selection for trial was completed).[7]

7. We find *Emerick* distinguishable from the instant case because, in that case, this Court found the following extenuating circumstances: Defendant's original expert witness became unavailable a week before trial whereupon defense counsel arranged for a new expert to give testimony, which was substantially similar to that contained in the original expert's report. After the jury was selected, defense counsel supplied plaintiffs with the new expert's name and, later that day, gave plaintiffs' counsel a copy of the expert's report. Plaintiffs' counsel had an opportunity to take the new expert's deposition over the weekend before plaintiffs' evidence was introduced on Monday and also had copies of both experts' reports before they offered evidence. Additionally, plaintiffs failed to demonstrate any prejudice as a result of defendant's untimely disclosure of the new expert's identity.

Here, however, Jennings and Evans were not testifying as replacement witnesses for suddenly unavailable experts, because appellees did not retain any experts as to the cause and origin of the fire prior to trial. Therefore, appellant had no advance notice of their testimony. Moreover, appellees did not even supply appellant with the names and reports of these experts during the one-week adjournment period so that appellant could prepare for this new testimony and possibly depose Jennings and Evans prior to their testifying on August 4. Finally, appellant demonstrated prejudice as a result of appellees'

The grant or refusal of a new trial is a matter within the trial court's discretion and will not be reversed on appeal absent a clear abuse of that discretion. *Canery v. Southeastern Pennsylvania Transportation Authority (SEPTA)*, 267 Pa.Superior Ct. 382, 391, 406 A.2d 1093, 1097 (1979). Here, the trial court overruled defense counsel's objection to allowing Jennings and Evans to testify, stating: "We think the argument of discovery in the interrogatories has no weight in light of the fact that these are witnesses that were not in the mind of counsel at the time the interrogatories were answered, or within the time that discovery would ordinarily have been pursued." (N.T. August 4, 1981 at 466–67). In denying appellant's motion for a new trial, the lower court apparently believed appellees' contention that they had been unaware of appellant's arson defense prior to trial. As we have found, however, the record clearly demonstrates that appellees had notice of this defense well in advance of trial, and probably as early as the pleadings stage. Therefore, we find that the lower court abused its discretion in refusing to grant a new trial. Accordingly, we reverse the order below and remand for a new trial.[8]

Reversed and remanded for a new trial.

Jurisdiction is not retained.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

The majority concludes that the trial court erred in allowing Appellees' expert witnesses to testify on rebuttal and thus remands for a new trial. Since my review of the record shows no prejudice or surprise to Appellant from the

nondisclosure of Jennings' and Evans' identities because it "was precluded from conducting any discovery of the opinions of the experts and from having an opportunity to meet their testimony." (Brief for Appellant at 14).

8. Appellant also raises other allegations of trial court error. Because of our disposition of this case, however, we need not dispose of those issues.

introduction of the expert testimony nor any bad faith on the part of Appellees, I respectfully dissent. I would also then reach the remaining issues raised by Appellants and affirm the judgment of the trial court.

As I read the majority opinion, it relies on Appellees' perceived failure to comply with the rules of discovery and the general belief that Appellees did not act in good faith in not retaining an arson expert or experts prior to trial. Specifically, the majority finds that Appellees' experts should have been precluded from testifying under Rules 4003.5 and 4019 of the Pennsylvania Rules of Civil Procedure. In addition, the majority infers bad faith by Appellees based on its finding that the pleadings gave ample notice to Appellees that Appellant would raise an arson defense at trial and that Appellees accordingly should have retained experts prior to trial who would then have been identified in answers to interrogatories or at the pre-trial conference. However, I feel the majority's analysis is flawed because it has ignored prior well settled case law in this Commonwealth.

The issue of whether to admit expert testimony undisclosed prior to trial has been addressed several times by this Court. In *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 399 A.2d 1095 (1979), a decision relegated to a footnote by the majority, this Court *en banc* established the analytical framework within which to consider admission of previously undisclosed expert testimony. The *Gill* Court set forth four criteria relevant to such determination: 1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, 2) the ability of that party to cure the prejudice, 3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and 4) bad faith or willfulness in failing to comply with a pre-trial order limiting witnesses to be called to those named prior to trial. *Id.*, 264 Pa.Superior Ct. at 382, 399 A.2d at 1102. Thus, under *Gill*, the trial judge still can admit, in his sound discretion, previously undis-

closed expert testimony despite the fact that the rules of discovery or a pre-trial conference order were not wholly complied with by a party.

The most recent pronouncement of this Court on the issue of the admission of previously undisclosed expert testimony is *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984). This Court stated in *Kemp:*

> While the late disclosure of the identity or qualifications of an expert is to be condemned, the mere occurrence of such a circumstance does not per se create grounds for a new trial. In *Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 399 A.2d 1095 (1979), a case cited by the Appellant, this Court declared that to preclude expert testimony, in the circumstance of late disclosure of information about him to the adverse party, is a drastic sanction, and unless necessary under the facts of the case, may be the basis for finding an abuse of discretion by the trial judge. Our Court also considered whether the sanction of preclusion of expert testimony should be granted, due to untimely response to pre-trial interrogatories, in the case of *Royster v. McGowan Ford, Inc.,* 294 Pa.Super. 160, 439 A.2d 799 (1982). There it was stated: "... [A]ssuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as the result of a dilatory disclosure". 294 Pa.Super. at 169, 439 A.2d at 804.

Id., 326 Pa.Superior Ct. at 330, 473 A.2d at 1374.

The majority attempts, in footnote three of its opinion, to portray the *Gill* criteria as merely "of some aid" in ruling on the admissibility of undisclosed expert testimony citing in support this Court's decision in *Sindler v. Goldman,* 309 Pa.Super. 7, 454 A.2d 1054 (1982). However, a close reading of *Sindler* reveals that this Court did employ the *Gill* criteria in reaching our holding. Further, the portion of *Sindler* cited by the majority was only a footnote which the

majority has somehow misinterpreted. Footnote eight of this Court's opinion in *Sindler* merely states that the *Gill*, a case involving a violation of a pre-trial order, can be applied to cases in which no pretrial order limiting witnesses has been entered. *Id.*, 309 Pa.Superior Ct. at 15, n. 8, 454 A.2d at 1058, n. 8. The majority interprets the footnote as rendering the *Gill* analysis merely advisory, a fact evident from its failure to employ such criteria in the body of its opinion. It is true that the majority concludes in footnote three of its opinion that the Appellees' experts would have been precluded from testifying under *Gill*, but the majority offers no reasoning to support its conclusions. In fact, were the majority to employ a *Gill* analysis, as I believe it was bound to do, it would have concluded as I do that the trial court properly permitted Appellees' experts to testify on rebuttal.

In the instant case, Appellees were permitted by the trial court to testify on rebuttal to contradict the opinion of Appellant's expert that the fire which destroyed Appellees' residence was arson. On appeal, Appellant cites *Gill* and argues it was prejudiced and surprised by Appellees' expert testimony. I am unable to agree. Appellant was not in fact surprised because it had raised the issue of arson and thus was fully prepared to argue the point at trial. Given this fact, Appellant was also not prejudiced since it had a full and fair opportunity to present its defense, cross-examine Appellees' experts and offer surrebuttal testimony. If Appellant was truly prejudiced or surprised, it could have cured the prejudice by a continuance, which it did not request. The testimony of Appellees' experts on rebuttal may have been unexpected, but it was not prejudicial or surprising to Appellant.

When the remaining two prongs of the *Gill* analysis are applied it becomes apparent that the testimony of Appellees' experts was properly admitted. There can be no serious contention that the calling of Appellees' expert disrupted the trial or other trials since the trial was only extended a few more days. Finally, I also believe that

there is no evidence in the record to support a contention that Appellees acted in bad faith by not disclosing their experts prior to trial or in not obtaining arson experts prior to trial. The basis of the majority's finding of bad faith is solely that Appellees should have been on notice from the pleadings that Appellant would raise the defense of arson. However, a reading of the pleadings shows that while there was some mention of a suspicious cause for the fire in question the defense of arson was never squarely raised until the pre-trial conference, a fact conceded by the majority. Further, when it became apparent to Appellees at trial that the cause of the fire was being specifically put in issue by Appellant, they expeditiously secured expert witnesses and made their presence known prior to the experts' testimony.[1] There is no other evidence in the record to even infer a finding of bad faith much less a willful and deliberate attempt by Appellees to circumvent and make a mockery of the rules of discovery. The majority takes the position, as I perceive it, that to not exclude the expert testimony here would render the rules of discovery and the sanctions thereunder useless. I do not share this view. While we should never condone violations of the discovery rules we also have recognized that the exclusion of expert testimony is a serious sanction and should only be imposed in certain situations. This is why this Court adopted criteria for exclusion in *Gill* and applied those criteria in cases following *Gill*. Had the majority of this Court fully considered and applied the *Gill* criteria I cannot help but think that it would have reached the same conclusion as I that the trial court was correct in its decision allowing Appellees' experts to testify.

1. In its opinion, the majority infers that Appellees were somehow required to anticipate and meet Appellant's arson defense. It must be noted that Appellees were in no way required, under the facts, to introduce expert testimony to disprove arson or even prove their case. Appellees were not required to prove a negative. It was Appellant's burden to prove arson which it attempted to do through expert testimony. It was only on rebuttal that Appellees felt it necessary to utilize expert testimony. Under the facts, I do not find it unusual, and certainly not bad faith, that Appellees waited until necessary to retain an expert.

Since I would affirm the trial court's decision on the expert testimony, I would also reach the remaining issues raised by Appellant and find that the trial court opinion correctly and adequately disposes of the issues presented. Thus, I would affirm the judgment of the trial court.