521 A.2d 451

**Robert E.J. CURRAN, Esquire, Executor of the Estate of Victor S. Panaccion, Appellant,**

**v.**

**STRADLEY, RONON, STEVENS & YOUNG, Appellee.**

**Robert E.J. CURRAN, Esquire, Executor of the Estate of Victor S. Panaccion, Appellee,**

**v.**

**STRADLEY, RONON, STEVENS & YOUNG, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1986.

Filed Feb. 20, 1987.

Garland D. Cherry, Sr., Media, for appellant in No. 1085 and appellee in No. 1111.

Edward C. Mengel, Jr., Philadelphia, for appellant in No. 1111 and appellee in No. 1085.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

Plaintiff, Victor S. Panaccion ("Panaccion"), brought a claim of legal malpractice against the defendant law firm, Stradley, Ronon, Stevens & Young ("Stradley"). After the jury returned a verdict against Stradley in the amount of $500,000.00, the trial court granted, in part, Stradley's judgment n.o.v., reducing the verdict to $243,000.00. Both parties now appeal. We find that a new trial is required and, accordingly, vacate the order and remand the case for a new trial.

## I. BACKGROUND

The seeds of this dispute were first sown in January of 1974, when Panaccion, the owner of a lumber company, entered into an agreement with Clifco Millwork ("Clifco," the "buyer") for the sale of the lumber company. The sale price of the business was $661,886.40, with Panaccion receiving a $100,000.00 down payment and the balance to be paid over a period of eleven years. Pursuant to the sales agreement, several certificates representing shares of stock in Clifco would be held in escrow by attorneys for both Panaccion and the buyer. After entering into the sales agreement, Panaccion secured the services of Stradley.

As of the time of settlement, the escrow agreement had not been prepared. It was agreed, however, that a member of the law firm, Herbert P. Eberharter,[1] would prepare the escrow agreement and act as escrow agent. Stradley drafted a security agreement giving Panaccion a secured interest in the accounts receivable and the inventory of the lumber company.

The closing took place in February of 1974. In October of 1974, the buyer's attorney informed Eberharter that a majority shareholder of Clifco had transferred the Clifco stock to another entity, Emblem Flag Company ("Emblem").[2] Without consulting Panaccion, Eberharter released the certificate held in escrow which represented the shares in Clifco owned by that shareholder, and substituted a certificate in the name of Emblem. Sometime after October of 1975, the remaining shareholder in Clifco died; pursuant to a buy-back agreement with the company, Clifco was required to purchase these shares. Eberharter released the remaining Clifco shares and substituted another certificate in the name of Emblem. As with the stock transfer in October of 1974, Eberharter did not first notify Panaccion. Hence, Emblem became the 100% owner of Clifco. Although Eberharter held stock powers for the certificates representing the prior owners' interests in the Clifco stock, he failed to get stock power for the certificates issued to Emblem. Under the escrow agreement, however, Clifco could vote the shares of stock without Panaccion's approval. In February of 1976, Emblem, the new owner of Clifco, voted to permit Clifco to sell the real estate of the lumber company to A & P Company for $243,000.00. The actual sale to A & P occurred prior to June of 1976.

1. Suit was brought against Eberharter in his capacity as the escrow agent. After the jury rendered a verdict against Eberharter in the amount of $548,000.00, the trial court granted his motion for judgment n.o.v. The cross appeal of Panaccion and Eberharter is addressed in a separate opinion.

2. There were 1,000 shares of Clifco stock issued and outstanding, 800 shares in the name of Yerger and 200 in the name of Sullivan. Yerger also held a majority interest in Emblem.

In June of 1976, Panaccion learned that all of the inventory in which he had held a security interest was dissipated. Thereafter, Panaccion brought suit against Stradley and Eberharter. Panaccion asserted that Stradley, *inter alia,* negligently permitted settlement of the sale of the lumber business to occur without first drafting the escrow agreement; drafted the escrow agreement permitting the Clifco shareholders the right to vote the shares of stock; failed to inform him of the transfer of the shares of stock to the new entity and to explain the significance and consequences of the transfers; and failed to inform him of the need to police the assets of the lumber business, which were subject to his security interest.

The jury returned a verdict against Stradley in the amount of $500,000.00. The trial court granted, in part, Stradley's motion for judgment n.o.v. and reduced the award to $243,000.00 (the sale price of the real estate to A & P in 1976), finding that Panaccion produced no other evidence of his loss.

Panaccion now raises two issues for our consideration: (1) whether the court used an improper standard for measuring damages when it reduced the jury award; and (2) assuming the proper standard was used, whether the court erred in setting aside a portion of the award. Stradley raises several more issues in its appeal: (1) whether the court erred in precluding the testimony of Stradley's expert witness; (2) whether it was error to permit Panaccion's expert witness to identify himself as a former judge; (3) whether the court erred in failing to grant a full judgment n.o.v. where there was no evidence of negligence which caused an actual loss to Panaccion; and (4) whether the court erred in failing to consider evidence which would further reduce the alleged damages.

## II. JUDGMENT N.O.V.

### A. The Legal Standard

■■■ Upon consideration of the denial of a motion for judgment n.o.v.[3] our scope of review is quite narrow. Viewing the evidence in a light most favorable to the verdict winner and granting that party the benefit of all reasonable inferences, we must only determine whether the evidence was sufficient to sustain the verdict. *Laniecki v. Polish Army Veterans Assoc.*, 331 Pa.Super. 413, 417, 480 A.2d 1101, 1103.(1984) (citations omitted).

### B. Elements of a Legal Malpractice Claim

■■■ This Court recently restated the elements of a claim of legal malpractice:

1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge; and

3. That such negligence was the proximate cause of damage to the plaintiff.

*Schenkel v. Monheit,* 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979). *Accord Gans v. Gray,* 612 F.Supp. 608, 615 (E.D.Pa.1985); *Duke & Co. v. Anderson,* 275 Pa.Super. 65, 71, 418 A.2d 613, 616 (1980).

*Trice v. Mozenter,* 356 Pa.Super. 510, 517, 515 A.2d 10, 13 (1986). Panaccion argued and introduced evidence in support of numerous claims of negligence against Stradley,[4] the essence of which is that the attorneys, through a series of representations, acts and inaction, failed to adequately protect his interests. As a result, Panaccion claims to have suffered a loss. Conversely, the thrust of Stradley's argu-

---

**3.** Although the trial court stated that Stradley's motion for judgment n.o.v. was granted in part, the reduction of the jury award is more properly characterized as a remittitur or a modification of the verdict. *See generally, Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355 (1983). Because the modification in no way altered a finding of liability, Stradley's motion for judgment n.o.v. was, in effect, denied.

**4.** The trial court noted that Panaccion presented evidence of not less than six acts of negligence by Stradley.

ment is that Panaccion's loss was due to the financial failure of the lumber business after the sale to Clifco, not because of any alleged negligence of the attorneys.

Unless the evidence is such that reasonable men cannot disagree, the question of whether the defendant's conduct is the cause of the injury is one for the jury. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 247, 465 A.2d 1231, 1234 (1983). The learned trial court specifically and thoroughly addressed the basis of several of Panaccion's claims and, after our own review of the record, we are satisfied that the evidence was sufficient for the jury to determine the issue of liability. Accordingly, for the reasons stated by the trial court, we conclude that Stradley's motion for judgment n.o.v. in this regard was properly denied.

Although the evidence was sufficient to support the jury's finding of liability, the record does not support the award of damages.[5] In order to recover in a malpractice action, the plaintiff must prove not only the negligence of the attorney, but also an actual loss resulting from that negligence. *Mariscotti v. Tinari, P.C.*, 335 Pa.Super. 599, 601–602, 485 A.2d 56, 57 (1984) (citations omitted). Once the fact that damages occurred has been established, the jury is permitted to determine the extent of those damages. R. Mallen & V. Levitt, *Legal Malpractice*, Sec. 303 (2d Ed.1981). Nevertheless, the plaintiff has the burden of presenting sufficient evidence by which damages can be determined on some rational basis and other than by pure speculation or conjecture. *See generally Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983).

Panaccion has demonstrated actual injury—the loss of his property rights under the sales and the escrow

5. Because a new trial is warranted on the issue of liability, *see supra*, Part III, we address the alleged errors regarding damages. *See generally, Kremer v. Janet Fleisher Gallery, Inc.*, 320 Pa.Super. 384, 392, 467 A.2d 377, 381 (1983) (*en banc*) (where ground for new trial exists, court need not address remaining errors unless (1) the alleged errors could be repeated on retrial, or (2) the alleged errors present a novel issue of law).

agreements.[6]   There is, however, absolutely no evidence in the record supporting the jury's valuation of that loss. Panaccion presented no testimony from an accountant, financial expert or appraiser, and no financial statements or records from the business documentating the value of the assets were introduced.[7]   Indeed, Panaccion's expert witness could not render an opinion as to the value of the assets in the fall of 1974, just months after the agreements were executed.   Moreover, Panaccion's expert testified that the full purchase price of $561,000.00 would probably not have been recovered.   Panaccion's counsel also added in closing argument that the jury would have to guess as to the value of some of the assets since there was no evidence of record on which to rely.   In short, the award of $500,-000.00 is totally unsupported on the record and is contradicted by the testimony of Panaccion's own expert witness. Thus, after reviewing the testimony and exhibits, we agree with the trial court that the only evidence of record by which his loss can be measured is the $243,000.00 paid by A & P to Clifco when the real estate was sold in 1976.

■   The final question for our determination is Stradley's claim that the award of $243,000.00 should have been further reduced to account for a mortgage on the property in the sum of $150,000.00.   In reducing the award, the court held there was no record evidence of the mortgage.   We disagree.   Testimony was introduced by the attorney for Clifco who opined as to the value of the inventory of the business and who stated that real estate was subject to a mortgage of about $150,000.00.   R.R. 89a–92a.   Although there was some confusion as to the effect of an objection to the testimony by counsel for Stradley, a careful reading of the notes of testimony reveals that the witness's statement concerning the mortgage remained on the record.   Thus,

6.   The question here is not whether damages are remote or speculative, see *Duke, supra,* but rather, whether the claim for damages can be liquidated.

7.   This Court is not holding that such expert testimony is always required.   In this case, Panaccion presented very little concrete evidence to support his claim for damages.

the amount of the mortgage should have been considered by the court in modifying the award.

## III.  ALLEGED TRIAL ERRORS

### A.  Preclusion of Expert Witness

The trial court barred Stradley's expert from testifying because the witness was not identified in response to Panaccion's interrogatories or in a pretrial conference statement. Stradley's counsel explained to the court that it had arranged for a person to serve as an expert witness but, shortly before trial, that person became unavailable to testify.  Stradley immediately began to search for another expert witness and, ten days prior to trial, secured the services of such a witness.  The next day, Stradley notified Panaccion by telephone that it would offer the testimony of this expert witness.  Panaccion's counsel acknowledged on the record that the next day Stradley informed him by telephone of these events (N.T. 627–629).  Both parties acknowledged that Stradley's expert was not identified in the answers to Panaccion's interrogatories and that Panaccion's counsel was first given a signed copy of the expert's report on the day of trial at which Stradley called its expert to testify.  Panaccion's counsel also acknowledged, however, that he had received an unsigned copy of the expert's report eight days prior to trial (N.T. 628).  Although the parties do not dispute this sequence of events, their arguments are decidedly antagonistic.  Stradley asserts that Panaccion was not prejudiced by an inability to prepare for cross-examination because the latter knew in advance of trial the identity of the expert and the substance of the testimony.  Panaccion maintains that the preclusion of the expert's testimony is mandatorily prescribed pursuant to the discovery rules.

Pursuant to the relevant discovery rule, the proponent of an expert witness is required to identify its expert witness in response to interrogatories and state the substance of the expert's facts and opinions in a signed report or answer.  Pa.R.Civ.P. 4003.5(a)(1).  The failure to comply

with Rule 4003.5(a)(1) is addressed in subsection (b), which provides as follows:

> (b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.Civ.P. 4003.5(b).

In the past, the effect of Rule 4003.5 has been less than clear. Prior to 1985, our Court had determined whether a witness should be precluded from testifying by examining four factors:

> 1. the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;
>
> 2. the ability of that party to cure the prejudice;
>
> 3. the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (and)
>
> 4. bad faith of (sic) willfulness in failing to comply with the court's order.

*Sindler v. Goldman,* 309 Pa.Super. 7, 15 n. 8, 454 A.2d 1054, 1058 n. 8 (1982), *citing Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 382, 399 A.2d 1095, 1102 (1979) (*en banc*). *See Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984) (no sanction imposed absent evidence of prejudice); *Emerick v. Carson,* 325 Pa.Super. 308, 472 A.2d 1133 (1984) (where expert was not identified in interrogatories but other party had an opportunity to take witness' deposition and had a copy of expert's report, no prejudice was shown and witness was permitted to testify; *Royster v. McGowen Ford, Inc.,* 294 Pa.Super. 160, 439 A.2d 799 (1982) (remanding case for consideration in light of four factors). In 1985, however, a panel of this Court held that pursuant to the governing discovery rules, Pa.R.Civ.P.

4003.5 and Pa.R.Civ.P. 4019(i),[8] the testimony of an undisclosed witness must be precluded absent "extenuating circumstances." *Kaminski v. Employees Mutual Casualty Co.*, 338 Pa.Super. 400, 407, 487 A.2d 1340, 1344 (1985). Although the *Kaminski* Court made clear that the preclusion of a witness's testimony was mandatorily prescribed under the discovery rules, the Court also noted that the testimony of the undisclosed witness was precluded under the four-factor test of *Sindler*.[9] *Kaminski*, 338 Pa.Super. at 407 n. 3, 487 A.2d at 1344 n. 3.

We acknowledge that the *Kaminski* decision failed to clarify the law. The effect of a Rule 4003.5 violation could vary depending upon which test—the four-factor approach of *Gill* and *Sindler* or the mandatory preclusion rule of *Kaminski*—was used. *See Kaminski*, 338 Pa.Super. at 420–21, 487 A.2d at 1352 (Del Sole, J., dissenting). Not surprisingly, the parties here each advocate an approach which would have us find in either's favor.

Our resolution of this matter is made easier, however, given a recent pronouncement by the Supreme Court of Pennsylvania. In *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (Pa.1986), the Supreme Court followed the multi-factor or prejudice approach in reversing the trial court's exclusion of a witness which was known to the opposing party. Specifically, the Court stated that where an expert witness has not been identified pursuant to a local or state discovery rule, "the presiding court must balance the facts and circum-

---

**8.** Pa.R.Civ.P. 4019(i) provides:

(i) A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

**9.** The court reasoned that it was appropriate to use the four-factor approach of *Gill* prior to the effective date (April 16, 1979) of Pa.R. Civ.P. 4019(i). *Kaminski*, 338 Pa.Super. at 407 n. 3, 487 A.2d at 1344 n. 3. We note, however, that since its adoption, Rule 4019(i) has not been uniformly applied. *See e.g., Sindler, supra,* and *Kemp, supra.*

stances of each case to determine the prejudice to each party." *Feingold,* 512 Pa. at 573, 517 A.2d at 1273. The Court quoted the Superior Court opinion at length, focusing upon the following factors:

> (B)ad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; *see Clark v. Pa.R.R.Co.,* 328 F.2d 591 (2d Cir.1964), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); ability of the party to have discovered the witnesses earlier, *see Hunt v. Pa.R.R.Co.,* 41 F.R.D. 349 (E.D.Pa.1967); validity of the excuse offered by the party, *Thompson v. Calmar Steamship Corp.,* 331 F.2d 657, 662 (3d Cir.1964); willfulness of the party's failure to comply with the court's order, *Taggart v. Vermont Transportation Co.,* 32 F.R.D. 587 (E.D.Pa.1963), *aff'd.* 325 F.2d 1022 (3d Cir.1964); the parties' (sic) intent to mislead or confuse his adversary, *Pakech v. American Export Isbrandtsen Lines, Inc.,* 69 F.R.D. 534 (E.D.Pa. 1976); and finally, the importance of the excluded testimony, *Clark, supra.* Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith of (sic) willfulness in failing to comply with the court's order.

*Feingold,* 512 Pa. at 573–574, 517 A.2d at 1273, *quoting, Feingold v. SEPTA,* 339 Pa.Super. 15, 21, 488 A.2d 284, 287 (1985).[10]

 ▮ We believe that *Feingold* is controlling in the present case. Further, after reviewing the record and the arguments of the parties, we conclude that the *Feingold* factors weigh heavily in Stradley's favor. The only claim of prejudice by Panaccion was his inability to prepare for the

---

**10.** The court did not consider the applicability of the sanction provision, Pa.R.Civ.P. 4019(i), nor did the court cite any of this Court's decisions which followed the rule of mandatory preclusion.

cross-examination of the expert witness's background and qualifications.[11] Although such prejudice is legitimate, we believe that Panaccion was in a position to cure that prejudice by requesting either a continuance or the opportunity to depose the witness. Panaccion was notified of the witness's identity almost two weeks in advance of trial and could have used that time to investigate the qualifications of Stradley's expert. During that time, Panaccion did nothing. This, we believe, mitigates any real prejudice caused by Stradley's untimely disclosure. *See Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369 (1984) (where party had thirteen days in which to investigate expert's background, no real prejudice flowed from an untimely disclosure of expert witness's identity and qualifications).

As for the other factors listed in *Feingold*, we note that Stradley's excuse for failing to comply with the discovery rule was justified given the sudden unavailability of its original witness one week prior to trial. Further, we are unable to characterize Stradley's conduct as willful or to say that Stradley acted in bad faith; there is simply no evidence in the record to support such claims. Nor does the record indicate that a waiver of the rule precluding the testimony would have disrupted the orderly and efficient administration of the court. Indeed, as Stradley notes, it offered the expert's testimony in the midafternoon and there would have been little, if any, disruption of the trial to conclude the day with the expert's direct testimony and permit Panaccion's counsel to prepare for cross-examination of the witness the next day.[12]

**11.** Although Panaccion argued before the trial court that he was prejudiced by the inability to cross-examine the proposed witness on the basis of qualifications and background (N.T. 628), Panaccion makes no claim before this Court that he would have been prejudiced by the testimony.

**12.** The record indicates that after the court sustained Panaccion's objection to the testimony, Stradley read a page of deposition testimony into evidence. Immediately thereafter, the jury was discharged for the day.

Panaccion maintains, however, that Stradley can show no prejudice flowing from the preclusion of its expert given that the law firm presented other testimony in its defense. We disagree. As a result of the court's ruling, Stradley lost the testimony of its sole expert witness. Contrary to Panaccion's assertions, the proposed testimony was, no doubt, necessary to the development of Stradley's defense.

In balancing the *Feingold* factors as they relate to each party, we conclude that the prejudice to Stradley substantially outweighs the potential prejudice to Panaccion.[13] *See Feingold*, 339 Pa.Super. 15, 488 A.2d 284 (1985) (despite noncompliance with discovery rule, witness should be permitted to testify where opponent had knowledge of the substance of the testimony and could show no prejudice); *Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369 (1984) (where opponent was not properly informed of proponent's expert witness until three days prior to trial and did not receive the expert's qualifications until the day the expert was called to testify, the witness could testify absent a showing of real prejudice flowing from the untimely disclosure). Accordingly, Stradley has demonstrated that a basis exists for the grant of a new trial.

A finding of substantial prejudice does not, however, automatically render the judgment a nullity. A new trial will not be granted unless it can be shown that the excluded evidence would have affected the verdict. *Kremer v. Janet Fleisher Gallery, Inc.*, 320 Pa.Super. 384, 388, 467 A.2d 377, 379 (1983) (*en banc*). In the present case, the testimony of Stradley's proposed expert witness could have affected the jury's verdict. Stradley's entire case was based upon the testimony of two witnesses—an attorney with the firm whose alleged negligence gave rise to this case, and its proposed expert witness who was precluded

**13.** We stress that our holding is based upon the guidelines relevant to the Supreme Court's disposition in *Feingold.* We render no opinion as to the applicability of either the exception to the mandate of Rule 4003.5 where "extenuating circumstances" are present, or the sanction provision, Pa.R.Civ.P. 4019(i).

from testifying. Contrary to Panaccion's assertions, the defendant-attorney did not testify as an expert. His testimony was directed toward explaining and defending the actions of his firm (N.T. 562–564).[14] The testimony of the expert witness would have been the only opinion evidence proffered by Stradley. In a case as complex as this, the expert's testimony was not only relevant to the issues of liability and damages, but also was crucial to Stradley's defense. It is not unlikely that the expert witness's testimony might have resulted in a different verdict. Thus, the preclusion of the expert testimony was error which, in our opinion, justifies the remedy of a new trial.

### B. Alleged Prejudice Due to Expert Witness's Background

Stradley also contends that the trial court erred in permitting Panaccion's expert witness to identify himself before the jury as a former judge of the Court of Common Pleas of Pennsylvania. The thrust of Stradley's argument is that the witness's experience as a judge was totally irrelevant to his expertise in the case; hence, the only possible effect of the testimony was to prejudice the jury.

Stradley's argument would have us presume that the jury found the witness's testimony credible merely because he was a former judge. We decline to accept such a far-reaching presumption.

The question of whether to exclude or admit evidence is one within the discretion of the trial court. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 22, 473 A.2d 584, 588 (1984). "A trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or

---

**14.** The defendant-attorney did not testify in lieu of Stradley's expert witness. The record indicates that this witness testified prior to the time the expert was called to testify and, thus, could not have anticipated the court's ruling. After examining the record, we are convinced that the testimony of this witness was not opinionated.

misleading the jury." *Id.* Evidence is prejudicial not where it merely hurts a party's case, but where it tends to fix a decision which has an improper basis in the minds of the jury. *Id.*

■ Contrary to Stradley's assertion, we agree with the trial court that the witness's background and experience was relevant in establishing his qualifications to testify as an expert. The witness was not called to testify as a judge; he testified as a practicing attorney who could best render an opinion as to the cause and extent of Panaccion's loss. Having the witness relate that, for a brief time, he served on the bench merely gave the jury a comprehensive view of his legal background since graduating from law school. We find no undue prejudice in this statement.

Further, Stradley was given ample opportunity and, indeed, did cross-examine the witness regarding his qualifications. In particular, Stradley elicited that this witness was appointed, not elected, to the court for a term of only twenty-six months (over the course of a career which spanned thirty years), and that he was defeated when he ran for election. The witness also stated that he had never presided in a malpractice case and had never before testified as an expert witness (N.T. 461). In addition, the court prohibited Panaccion's counsel from referring to the witness as "Judge," and instructed the jury to give weight only to such expert testimony which was supported by the facts and deemed worthy of belief.

In short, the court weighed the probative value of disclosing the witness's background with the prejudice, if any, attendant to such information. We cannot say that the court abused its discretion by admitting such testimony. Accordingly, we find that this claim of error does not warrant the grant of a new trial.

The order of the trial court is vacated and the case is remanded for a new trial. Jurisdiction is relinquished.