## Miller v. Walker

C.P. of Montgomery County, no. 94-21789.

Superior Court 00277PHL95.

*James W. Zerillo,* for appellant.
*Rhonda Miller,* pro se.

CARPENTER, *J.,* February 16, 1995—

## FACTS

Appellant Lawrence Walker Sr. has appealed an interlocutory protection from abuse order of this court entered after a hearing on December 15, 1994. Appellant did not seek our permission to appeal the interlocutory order pursuant to Rules of Appellate Procedure 312 and 1311. The protection from abuse petition was filed by Rhonda Miller the natural mother on behalf of her 7-year-old son Joshua Walker. The petition alleged and the proof showed that appellant grabbed Joshua, striking him with a board causing bruises on his arm and leg, also causing pain. Mrs. Miller discovered these bruises on November 13, 1994 after Joshua had spent the weekend with appellant. Appellant is the natural father of Joshua and another child, Crystal. The parties are divorced. Appellant chose to deny that the incident had ever occurred. At the hearing, however, the credible evidence and pho-

tographs showed that appellant had struck Joshua with the board, leaving the bruises and causing Joshua to cry and feel pain. Based on the credible evidence this court entered an order which prohibited appellant from abusing, harassing or threatening Joshua, and awarded Rhonda Miller legal custody of Joshua and Crystal, for a period of nine months. The instant appeal followed although the order entered is interlocutory and not appealable.

## ISSUES

(1) Whether this court's finding of abuse was supported by the evidence?

(2) Whether this court's admission of relevant testimony should be sustained on appeal?

(3) Should appellant's appeal be quashed as interlocutory?

## DISCUSSION

As previously stated, this appeal centers around this court's finding that appellant abused his son within the meaning of the Protection From Abuse Act. This court, therefore, finds it relevant to discuss the standard of review regarding protection from abuse cases. The standard of review on appeal for protection from abuse cases was clearly articulated by the Superior Court in *Snyder v. Snyder,* 427 Pa. Super. 494, 629 A.2d 977 (1993):

"In considering the sufficiency of the evidence to sustain the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict." *Id.* at 505, 629 A.2d at 982 (citing

*Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa. Super. 17, 24, 521 A.2d 451, 454 (1987)); See also, *Taylor v. Celotex Corporation,* 393 Pa. Super. 566, 573, 574 A.2d 1084, 1088 (1990).

Protection from abuse petitioners are not required to establish the occurrence of abuse beyond a reasonable doubt, rather, they need only to prove the allegation of abuse by a preponderance of the evidence. 23 Pa.C.S. §6107(a); *Snyder v. Snyder, supra* at 504-505, 629 A.2d at 982. This court found that Rhonda Miller and Joshua had established the requisite burden of proving that abuse had occurred. On the other hand, appellant was not a credible witness. He further sought to mislead this court through the presentation of a Children and Youth Services caseworker in an effort to divert our focus from applying the proper abuse standard pursuant to the Protection From Abuse Act. Appellant erroneously attempted to persuade us to apply the abuse definition under the Child Protective Services law. We declined to do so. We firmly believe that our finding of abuse was supported by the credible evidence.

## I. This Court's Finding of Abuse Was Supported by the Credible Evidence

Appellant raises various complaints in his concise statement of matters complained of on appeal which can be addressed under the single issue of whether this court's finding of abuse under the Protection From Abuse Act was supported by the weight of the evidence. This court correctly determined that abuse had been established by Mrs. Miller on behalf of Joshua since the credible evidence clearly demonstrated that appellant had abused his 7-year-

old son Joshua by striking him with a board causing pain and bruising. Additionally, the evidence demonstrated that appellant had been abusive in the past. The Protection From Abuse Act as amended defines abuse as follows:

"Section 6102. Definitions

"(a) General rule . . . 'Abuse.' The occurrence of one or more of the following acts between family or household members:

"(1) Attempting to cause or *intentionally, knowingly or recklessly causing bodily injury,* serious bodily injury . . . with or without a deadly weapon.

"(2) Placing [by physical menace] another in reasonable fear of imminent serious bodily injury.

"(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. §2903 (relating to false imprisonment).

"(4) Physically or sexually abusing minor children, including such terms as defined in chapter 63 (relating to child protective services).

"(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority under circumstances which place the person in reasonable fear of bodily injury. . . ." 23 Pa.C.S. §6102(a)(1)-(a)(5). (emphasis added)

The evidence showed that appellant struck Joshua with a board, hard enough to leave a large bruise on his leg and cause him to cry and feel pain. Appellant testified that he did not strike Joshua with a board on the day of the incident. Appellant's testimony lacked credibility in light of the testimony of Joshua, Mrs. Miller and Crystal. Mrs. Miller testified that:

"I had my—my children were dropped off to me on a Saturday evening. And I went to give Joshua a bath Sunday morning, and he had a huge bruise on his leg. And I asked him, 'Where did you get that bruise from?' " (N.T. December 15, 1994, p. 3.)

Mrs. Miller brought with her five photographs taken on November 13, 1994 which were admitted into evidence. The photographs showed a large bruise on Joshua's leg and another on his arm. (Plaintiff's exhibit no. 1.)

Joshua testified as follows:

"Q. [By the court] Okay. What I'd like to know is what, if anything, happened involving your father that may have hurt you?

"A. He took—he had a big piece of wood, and he— and at the bottom of it he gots a little flat handle that big, and the rest of it is like that big. (Indicating.) And when I'd be bad—he used to have it because when I'd be bad, because I got spankings because I was bad.

"Q. Did he hit you with this piece of wood recently?

"A. Yes.

"Q. Where did he hit you? On what part of your body?

"A. On my leg.

"Q. And did you feel any pain?

"A. Yes.

"Q. What kind of pain did you feel?

"A. Pain. I don't know what type of pain—what I had, but I had a black and blue mark." (N.T. December 15, 1994, pp. 23-24.)

Crystal Walker testified as follows:

"Q. [By the court] Did you see what happened?

"A. I just saw him [referring to her father] take a board and go in the room.

"Q. Okay. You didn't see him actually hit your brother?

"A. Umm-umm.

"Q. And did you have a chance to talk to your brother right after that?

"A. No.

"Q. Okay. Did you hear any noise come out of that room?

"A. Yeah. I heard Joshua crying. . . .

"Q. [By the court] Did you see the bruise on Joshua, by the way? Did you ever see it?

"A. When my mom was taking the pictures.

"Q. You saw it then, right?

"A. Umm-umm." (N.T. December 15, 1994, pp. 29 and 31.)

The testimony of Mrs. Miller, her son Joshua and her daughter Crystal, therefore, clearly revealed that appellant had, in fact, intentionally, knowingly or recklessly caused bodily injury to Joshua by striking him with a board.

Appellant's stepfather Delbert R. Jones who appeared on behalf of appellant testified that Joshua had hurt his leg while riding his bicycle at Mr. Jones' house. When asked about the bicycle incident in the robing room, Joshua testified as follows:

"Q. [By the court] Did you fall off your bike recently?

"A. (Nods head up and down.)

"Q. Did that leave any bruising when you fell off your bike?

"A. No.

"Q. Did you get hurt then?

"A. No." (N.T. December 15, 1994, pp. 26-27.)

Clearly Joshua, who testified in the robing room,[1] had a different recollection of events than Mr. Jones. Mr. Jones never stated that Joshua was bruised during the bicycle incident. Mr. Jones also stated that Joshua did not cry out in pain after the fall. (See N.T. December 15, 1994, p. 66.) This court, therefore, did not abuse our discretion by giving greater weight to the testimony of Joshua, Crystal and Mrs. Miller than the testimony of appellant and Mr. Jones.

Appellant contends that our finding of abuse under the Protection From Abuse Act was in error simply because an investigator from the Office of Children and Youth thought that Joshua's injury was not serious. Judy Landis from the Office of Children and Youth testified on behalf of appellant. She stated that Joshua's injury was not serious. Mrs. Landis testified as follows:

"A. Well, the injury that the child received was not serious, was not considered serious *under the child protective services law.* So I unfounded the case. . . .

"Q. So it's your opinion that Joshua did not suffer serious physical injury?

"A. No, he did not suffer serious bodily injury. . . .

"[By the court:]

"Q. Okay. Let me see if I have this straight. You're applying the serious bodily injury standard; is that correct?

"A. Yes.

---

1. Joshua testified in the robing room by the agreement of the parties.

"Q. And you're using the definition from the Crimes Code?

"A. Yes.

"Q. Under the aggravated assault section?

"A. Right. When I interviewed the child, I saw no bruises. . . .

"Q. Now, if the standard were bodily injury, meaning impairment of physical condition or substantial pain, you would have a different opinion, would you not?

"A. I don't believe so, because I didn't see the bruises and the child had indicated to me that this was the only time this had ever occurred." (N.T. December 15, 1994, pp. 52-54.)[2]

Appellant's argument, that since a Children and Youth investigator did not find abuse pursuant to Child Protective Services law, therefore no abuse occurred under the Protection From Abuse Act, is absurd. The standard for abuse pursuant to the Protection From Abuse Act is a lesser standard. Mrs. Landis applied the Crimes Code definition of serious bodily injury pursuant to the Child Protective Services statute. To find abuse under the Protection From Abuse Act, the petitioner needed only to demonstrate that the respondent *attempted to cause or intentionally, knowingly or recklessly caused bodily injury* to the victim. Here Joshua's bodily injury was evidenced by a large bruise on his leg. Three credible witnesses and five photographs conclusively demonstrated that Joshua had bruising and had been abused by appellant. Therefore, based on the evidence presented, this court properly exercised

---

2. Mrs. Landis did not see Joshua until the 16th. (N.T. December 15, 1994, p. 49.)

our discretion in determining that abuse had been inflicted by appellant on 7-year-old Joshua.

## II. *This Court Properly Admitted Relevant Testimony at the Protection From Abuse Hearing Relating to Appellant's Past Incidents of Abuse*

Appellant's claim that this court's permitted inadmissible testimony from Mrs. Miller and her mother, Jean Buy, concerning other incidents of abusive conduct on the part of appellant, is contrary to applicable case law. Although appellant does not specify which statements he believes were inadmissible, he seems to complain primarily about Mrs. Miller and her mother's testimony regarding past incidents of abusive conduct on the part of appellant. The Superior Court has recently addressed this issue in *Weir v. Weir,* 428 Pa. Super. 515, 631 A.2d 650 (1993). The court in *Weir* stated:

"Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Evidence is admissible if . . . [it] logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* at 531, 631 A.2d at 658. (citations omitted)

The Superior Court upheld the trial court's finding that "evidence of prior abuse was relevant and probative with respect to the question of whether [the defendant's] conduct reasonably placed [the victim] in fear of imminent serious bodily injury at the time the instant abuse oc-

curred." *Id.* (citing *Snyder v. Snyder, supra* at 506, 629 A.2d at 983).

Instantly, the testimony which this court found admissible over appellant's objection, concerned past incidents of abusive conduct by appellant towards the children. This testimony was clearly relevant with respect to the issue of whether Joshua was reasonably in fear of bodily injury from appellant. This court, therefore, properly exercised our discretion in admitting relevant testimony concerning appellant's abusive conduct toward his children.

### III. *Appellant's Challenge to This Court's Protection From Abuse Order Should Be Quashed As Interlocutory*

Although of no precedential value, the Superior Court has recently decided, in a memorandum opinion in *Gabel v. Gabel,* 659 A.2d 8 (Pa. Super. 1995) that a protection from abuse order is not a final appealable order. The court in *Gabel* stated, "While a protection from abuse order is not a final appealable order, we have undertaken review and decision because (1) such orders are the subject of procedural ambiguity, and (2) the trial judge, apparently by reason of that ambiguity, labeled the order of disposition as a 'final protection from abuse order.' "[3] We, therefore, believe that the question of the interlocutory nature of protection from abuse orders is worthy of our discussion and analysis.

---

3. We believe that the word "final" on the protection from abuse form order is used merely to distinguish orders entered after a hearing from "temporary" protection from abuse orders entered ex parte.

Rule 341(a) of the Pennsylvania Rules of Appellate Procedure defines final orders from which an appeal may be taken. The rule provides:

"(a) *General rule.* Except as prescribed in subdivision (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

"(b) *Definition of final order.* A final order is any order that:

"(1) disposes of all claims or of all parties; . . ." Pa.R.A.P. 341(a), 42 Pa.C.S.

A protection from abuse order is not a final order from which an appeal may be taken since it does not dispose of all claims of the parties.

Protection from abuse orders are modifiable under the Protection From Abuse Act. Section 6117 provides:

"Unless otherwise indicated in this chapter, a proceeding under this chapter shall be in accordance with applicable general rules and shall be in addition to any other available civil or criminal remedies. The plaintiff and the defendant may seek modification of an order issued under section 6108 (relating to relief) at any time during the pendency of an order. Modification may be ordered after the filing of a petition for modification, service of the petition and a hearing on the petition." 23 Pa.C.S. §6117.

Instantly appellant has not filed a petition for modification of our protection from abuse order.

Secondly, much of the relief available pursuant to the Protection From Abuse Act is very similar to the temporary relief available under the Divorce Code, 23 Pa.C.S. Temporary relief granted pursuant to the Divorce Code is

interlocutory until a final divorce decree is entered. Protection from abuse orders are, by their terms, temporary since they are only intended to last up to one year. The relief granted pursuant to a protection from abuse order is also temporary in nature. Such relief may include, as in this case, awarding temporary custody to the petitioner. Section 6108(a)(4) of the Protection From Abuse Act provides:

"Nothing in this paragraph shall bar either party from filing a petition for custody under chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure. In order to prevent further abuse during periods of access to the plaintiff and child during the exercise of custodial rights, the court shall consider, and may impose on a custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse." 23 Pa.C.S. §6108(a)(4).

This section makes it clear that an award of custody under the Act is modifiable, temporary in nature, and not a final custody order. Therefore, a temporary award of custody pursuant to the Protection From Abuse Act is not appealable as a final order.

Another type of relief which a court is empowered to grant under the Protection From Abuse Act is awarding the petitioner exclusive possession of the parties' residence. See 23 Pa.C.S. §6108(a)(2). This exclusive possession would elapse at the end of the term of the order which can be, at most, one year in duration. (See *Weir v. Weir, supra* at 527, 631 A.2d at 656.) The one year duration of a protection from abuse order is consistent with the purpose of the Act "which is to provide spouses . . . and children with immediate temporary protection from abuse." *Id.* at 524, 631 A.2d at 654. (citations omitted)

A court could also order the defendant to pay financial support to those persons the defendant has a duty to support. 23 Pa.C.S. §6108(a)(5). The Protection From Abuse Act clearly states:

"The support order shall be temporary, and any beneficiary of the order must file a complaint for support under the provisions of chapter 43 (relating to support matters generally) and 45 (relating to reciprocal enforcement of support orders) within two weeks of the date of the issuance of the protection order." 23 Pa.C.S. §6108(a)(5).

Finally, the court, as in this case, may order the defendant to refrain from abusing the plaintiff or minor child. 23 Pa.C.S. §6108(a)(1). This type of relief would end with the duration of the protection from abuse order. This relief renders the future abusive conduct of the defendant punishable by "imprisonment up to six months or a fine . . . of not less than $100 nor more than $1,000, or both. . . ." 23 Pa.C.S. §6114(b). We believe that a final appealable order would exist after imposition of sentence for a violation of a protection from abuse order.

By way of analogy, in divorce proceedings, orders granting interim relief such as exclusive possession of the marital residence, alimony pendente lite and spousal support are not final appealable orders. The Pennsylvania Supreme Court in *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985), addressed this issue concerning the appealability of interim awards of alimony pendente lite. The court in *Fried,* looked at the United States Supreme Court case of *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541 (1949), for guidance. *Cohen* created an "exception to the final judgment rule for situations where postponement of appeal until after final judgment might

result in irreparable loss of the right asserted." *Fried v. Fried, supra* at 94, 501 A.2d at 214 (citing *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. at 546). (citations omitted)

The court in *Cohen*, enumerated three factors to be considered in determining appealability:

"Under *Cohen*, an order is considered final and appealable if *(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." Id.* at 94, 501 A.2d at 214 (citing *Cohen*, 337 U.S. at 546). (emphasis in original)

The *Fried* court found that an order awarding interim relief such as alimony pendente lite did not meet the third part of the *Cohen* test since the lower court retained the power to make adjustments in the final settlement of the divorce (*i.e.,* in the equitable distribution phase) which would protect an aggrieved party from irreparable loss. *Id.* at 97, 501 A.2d at 215.

The court further found that to allow appeals in such cases would promote, "a policy which allows piece-meal . . . litigation, and favors the party with the greater resources, who can strategically delay the action . . . ." *Id.*

Later, the Superior Court in *Shazes v. Baltuskonis*, 359 Pa. Super. 599, 519 A.2d 514 (1987), addressed the issue of whether a pre-divorce order awarding the husband exclusive possession of the marital residence was interlocutory. The Superior Court looked to the Pennsylvania Supreme Court's decision in *Fried* and determined that

"There exists no basis to distinguish between interim awards of counsel fees and other interim orders. The *Fried* opinion speaks in terms of interim orders in general and the adverse effect interlocutory appeals have upon the progress of a matrimonial case." *Id.* at 601-602, 519 A.2d at 515-16.

The Superior Court in *Dubin v. Dubin,* 372 Pa. Super. 84, 538 A.2d 1362 (1988), examined the related issue of whether an order of spousal support is a final appealable order. The court held that spousal support and alimony pendente lite orders, and other orders granting such interim relief, are interlocutory orders from which no appeal lies until final disposition of the divorce action. *Id.* at 86, 538 A.2d at 1363.

Instantly, this court's order of December 15, 1994, prohibited appellant from abusing, harassing or threatening Joshua, and awarded Rhonda Miller custody of Joshua and Crystal, for a period of nine months. By its terms our order is temporary since it only lasts for nine months. This protection from abuse order, like orders under the Divorce Code which grant temporary relief, does not dispose of all claims of the parties. Due to its modifiable nature, this court retains the power to make adjustments in the order. Appellant's appeal from our entry of the protection from abuse order should, therefore, be quashed as interlocutory.

## CONCLUSION

This court found that appellant's behavior was highly inappropriate. Accordingly, this court found that appellant had abused his son, and that in order to insure that no further abuse would take place, it was imperative to sepa-

rate the two for a period of nine months. This is exactly the type of protection which the Protection From Abuse Act was intended to enable the courts to afford to abused children: "The [very] purpose of the [Protection From Abuse] Act is to react to early signs of abuse and prevent more serious abuse from occurring." *Snyder v. Snyder, supra* at 511, 629 A.2d at 986. This court took the steps which we deemed to be appropriate and consistent with this objective. The best interests of the 7-year-old, Joshua Walker, having been physically assaulted, dictated the result here. If this court erred, we erred on the side of protecting the child.

Based on the foregoing analysis, the appeal should be quashed as interlocutory or in the alternative, the order of this court should be affirmed.