Susa v. Ellwood City Hospital

*Joseph S. Bellissimo* and *Scott M. Simon*, for plaintiff.

*Kathryn M. Kenyon*, for defendants Ellwood City Hospital and Ellwood City Hospital d/b/a Mary Evans Extended Care Center.

*Sean D. Callaghan*, for defendant Valley Medical Facilities, Inc. d/b/a The Medical Center, Beaver, Pa.

COX, *J.*, April 3, 2014—Before the court for disposition are the partial motions for summary judgment filed on behalf of the defendants Ellwood City Hospital, Ellwood City Hospital d/b/a Mary Evans Extended Care Center and Valley Medical Facilities, Inc. d/b/a the Medical Center, Beaver, PA, (hereinafter "defendant Valley Medical") which argues that the expert testimony fails to establish a causal connection between the worsening of the decedent's pressure wounds and the failure to properly assess the decedent's nutritional status, failure to accurately document the decedent's skin condition, improper staffing and failure to properly educate their staffs.

On April 24, 2008, the decedent George Susa was admitted to the Medical Center, Beaver, PA (hereinafter "Medical Center") to have a transurethral prostatectomy to treat his benign prostatic hyperplasia. Prior to the surgery, a Braden Pressure Ulcer Risk Assessment was performed on the decedent, which revealed he had a score of 6 indicating he was at high risk for developing pressure wounds. The decedent underwent the surgery that lasted for approximately one hour and fifteen minutes, in which he was placed in the dorsal lithotomy position that put direct pressure on his sacral region. The decedent was

not repositioned while in the Post-Anesthesia Care Unit or "PACU," even though he was considered a high risk for the development of pressure related skin ulcers. On April 25, 2008, a nurse employed by Valley Medical Facilities, Inc. (hereinafter "defendant Valley Medical") noted a change in the decedent's skin condition, marking his chart with the note "post op meatus & coccyx." He was repositioned every two hours. The next day, the decedent was moved to a recliner where he spent six and one-half hours without being repositioned and no pressure relieving devices were utilized. Over the next few days, there were notes relating to changes in the decedent's skin condition, but no physician was contacted nor was a wound care assessment performed at that time. On April 28, 2008, nutrition services indicated that the decedent was 90 percent of his ideal body weight and he was a high nutritional risk. At the time, he was too lethargic to eat properly. His original weight upon entering the medical center was 135 pounds. On May 1, 2008, nutrition services recommended tube feeding if he continued to be unable to orally ingest nutrition. On that day, the decedent's daughter expressed concern over her father's deteriorating health. On May 4, 2008, a specialty bed was ordered for the decedent, but there is no indication the specialty bed was provided to the decedent.

It was noted that the decedent's appetite increased on May 5, 2008, when he was admitted to Providence Care Center and his weight was recorded as 136.4 pounds. However, on May 7, 2008, the decedent's weight decreased to 131.4 pounds. The decedent was then

transferred to Katera's Kove[1] on May 12, 2008, and his weight was recorded as 131.4 pounds. It was documented that the decedent had two pressure ulcers, a Stage II and a Stage III wound, near his coccyx. On May 12, 2008, the decedent was taken to the emergency room at Ellwood City Hospital and it was noted that he was "thinly built and poorly nourished." His weight at that time was 122 pounds and 11.2 ounces. Defendant Ellwood City Hospital was unable to obtain a specialty mattress for the decedent at that time. Dr. James L. Gardner, Jr., provided a wound consultation upon the decedent's admission to Ellwood City Hospital. There does not appear to be any evidence that a plan of care was created for the decedent's skin breakdown. Also, while at Ellwood City Hospital, his nutritional status began to decline. He had an oral intake of 38 percent of meals with a fluid intake of not more than 960 cc daily and the plan was to continue the present plan of care. On May 18, 2008, it was ordered that the decedent be given a can of Boost 1 three times daily.

On May 20, 2008, the decedent was transferred to Mary Evans Extended Care Unit (hereinafter "Mary Evans"), which is the skilled nursing section of Ellwood City Hospital. At that time, the decedent underwent a pressure ulcer assessment that revealed he had three pressure ulcers near his coccyx, a Stage IV wound and two Stage II wounds. The decedent's weight was 137 pounds upon admission at Mary Evans,[2] It was also ordered that the

1. Katera's Kove is a personal care and secured dementia community, which provides 24-hour care for its residents.
2. It must be noted that the plaintiff's expert Mary Arnold Long, MSN, RN, CRRN, CWOCN-AP and ACNS-BC, stated that it was likely

decedent be given a can of Boost 1 twice daily, which was reduced from one can of Boost 1 three times daily. Another pressure ulcer assessment was conducted on May 28, 2008, which indicated that the decedent developed a fourth pressure ulcer and two other wounds had deteriorated. The records demonstrated that the decedent had a Stage IV wound, two Stage III wounds and a Stage III wound. However, a minimum data set was completed several days later that indicated the decedent had three pressure ulcers. There is no indication that the employees of Mary Evans walked the decedent to relieve pressure from the wounds, even though the records demonstrate that he was able to ambulate for 20 feet with a wheeled walker.

On June 4, 2008, the decedent was discharged to Kindred Hospital[3] for management of his pressure ulcers. At that time, he had three pressure ulcers, which included a Stage IV wound, a Stage III wound and a Stage II wound, near his coccyx. Upon being admitted to Kindred Hospital, it was determined that the decedent had an additional Stage II pressure ulcer on his coccyx. After extensive treatment at Kindred Hospital, the decedent's wounds began to heal. He was then transferred to Beaver Valley Nursing Center for rehabilitation on July 1, 2008. By August 22, 2008, the decedent completed his rehabilitation and was transferred to Katera's Kove. The decedent's pressure ulcers, were healed by December of 2008. The decedent continued to

---

this weight was an estimate and the decedent was not actually weighed as it is improbable that he would have gained 14 pounds based upon his limited diet.

3. Kindred Hospital is a transitional care hospital, which provides long-term acute care to patients needing continued care or extended recovery time.

live at Katera's Kove until he died on March 3, 2012.

On April 7, 2010, the plaintiff filed suit seeking damages based upon claims for medical malpractice by the defendants based upon their alleged failure to provide adequate care for the decedent's pressure ulcers and his malnutrition. In support of these claims, the plaintiff has presented the expert reports of Mary Arnold Long, who has expertise in the field of nursing, and Thomas E. Serena, M.D., a surgeon, to provide his opinion in the field of wound care. In response, the defendants have now filed their motions for partial summary judgment contending that the expert reports presented by the plaintiff fail to establish the essential element of causation.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999)). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000). When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving

party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 752 A.2d 339 (2000). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

In order to establish a claim for negligence, a plaintiff must prove the following elements: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. 2004) (citing *Burman v. Golay & Co., Inc.*, 420 Pa. Super. 209, 616 A.2d 657 (1992)). Under Pennsylvania law, a plaintiff must establish that the defendant's action was a substantial factor in bringing about the harm incurred. *Mahon v. W.C.A.B. (Expert Window Cleaning and State Workers' Insurance Fund)*, 835 A.2d 420, 428 (Pa. Cmwlth. 2003)

(citing *Smith v. Philadelphia Transportation Co.*, 202 Pa. Super. 278, 195 A.2d 168, 170(1963)). "In determining whether a factual cause is a legal cause, the jury must consider many elements, including intervening natural events, the passage of time, intervening actors, and the conduct of the injured party." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 494 (3d Cir. 1985). It is important to note that determining causation is an issue for the jury to decide, unless the evidence is such that reasonable people cannot disagree. *Kirschner v. K & L Gates LLP*, 46 A.3d 737, 754 (Pa. Super. 2012) (citing *Curran v. Stradley, Ronon, Stevens & Young*, 361 Pa. Super. 17, 521 A.2d 451, 455 (1987)). "Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Owen J. Rogal, D.D.S., PC.*, 573 Pa. 245, 255, 824 A.2d 1140, 1145 (2003) (citing *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 (1997)).

In her expert report, Ms. Long identified several issues with the care provided by the defendants, which included the lack of repositioning of the decedent following his surgery, failing to provide a more suitable resting surface for him, such as a chair cushion or a different mattress, the failure to notify a physician of changes to the decedent's skin condition, failing to perform a wound care consultation and a failure to adequately treat the decedent's skin condition. Ms. Long also stated that there

was a failure by the defendants to address the decedent's nutritional issues. However, her report is devoid of any reference as to whether the decedent's malnutrition actually caused or attributed to the harm suffered by the decedent. Ms. Long states, "lack of attention to Mr. Susa's nutritional status may have affected Mr. Susa's long term outcome" and "Mr. Susa's stage IV pressure ulcer was the result of an avoidable suspected deep tissue injury suffered at Beaver Valley Hospital following Mr. Susa's admission 4/24/08." Concerning defendant Valley Medical, Ms. Long emphasizes that there were issues with the medical care provided to the decedent, such as failure to provide a pressure dispersion surface or table, there was no evidence of repositioning of the decedent, failure to reposition the decedent on April 26, 2008, infrequent repositioning, failure to provide an alternative support surface for the decedent's bed, failure to inform a physician of changes to the decedent's skin condition and there is no evidence of treatment initiated to sacrococcygeal area when impairment to skin integrity was recognized. These statements seem to indicate that defendant Valley Medical breached its standard of care in those areas. In addition, Ms. Long cited to the following issues with the care provided by defendant Ellwood City Hospital and Mary Evans: the air mattress not placed for four days, no plan of care created for potential or actual skin impairment and the transfer form was silent on any order for a mattress or chair cushion. Ms. Long did not provide a causal connection between the decedent's pressure wounds and the actions or inactions of the defendants concerning nutritional issues, failure to document changes in the

decedent's skin condition, lack of training for their staffs, failure to provide a sufficient number of personnel and their failure to provide timely medical attention.

The plaintiff also provided the expert report of Thomas E. Serena, M.D., who specializes in wound treatment and hyperbaric medicine. He provided an explanation of causation in relation to the pressure wounds and the treatment the decedent received from the defendants. He explained that the pressure ulcers developed as a result of inattention during the peri-operative period at Beaver Valley Hospital. In addition, the pressure ulcers worsened and another pressure ulcer developed due to inattention during the decedent's stay at Ellwood City Hospital and Mary Evans. Dr. Serena also stated, "Further, the breaches were causes in fact and substantially contributed to the development and progression of the pressure ulcers." Therefore, the plaintiffs have presented sufficient evidence to establish the element of causation for the claims involving the development and progression of the decedent's pressure ulcers. Conversely, the plaintiffs have failed to demonstrate that the lack of diagnosis and inattention or mistreatment of the decedent's malnutrition contributed to any harm or injury sustained by the decedent.

For the reasons set forth in this opinion, the court grants the defendants' motions for partial summary judgment in part and denies the motions in part. The plaintiff did not demonstrate that the defendants' lack of staffing, lack of documentation concerning the decedent's skin condition, failure to properly train their staffs and failure to address

the decedent's nutritional issues contributed to the worsening of the decedent's pressure wounds. Paragraph 175 subparagraphs A through C, G, N, S, V through Z, paragraph 177 subparagraphs A through M, O through Q, paragraph 197 subparagraphs A through C, the portion of subparagraph F concerning defendant Ellwood City Hospital's failure to notify the decedent's family of his changes in condition, H through N, P through T, V, Y, AA through DD, FF, GG and paragraph 199 subparagraphs A through M, O through LL and NN through SS of the complaint are stricken. These paragraphs contain allegations stemming from the decedent's malnutrition as well as the defendant's lack of staffing, failure to provide nursing protocols, failure to properly train their nursing staffs, failure of the defendant's employees to document the decedent's condition and failure to properly supervise their staffs for which there is no expert testimony establishing causation. The plaintiff may proceed to trial on all other allegations in his complaint.

## ORDER OF COURT

Now this 3rd day of April, 2014, this case being before the court on January 27, 2014, for oral argument on the partial motions for summary judgment filed by the defendants Ellwood City Hospital, Ellwood City Hospital d/b/a Mary Evans Extended Care Center and Valley Medical Facilities, Inc. d/b/a The Medical Center, Beaver, PA, with the parties appearing through their counsel, Thomas Susa, as administrator of the estate of George Susa, deceased, represented by counsel, Joseph S. Bellissimo, Esquire and Scott M. Simon, Esquire

and the defendant Ellwood City Hospital and Ellwood City Hospital d/b/a Mary Evans Extended Care Center represented through counsel, Kathryn M. Kenyon, Esquire and the defendant Valley Medical Facilities, Inc., d/b/a The Medical Center, Beaver, PA, represented through counsel, Sean D. Callaghan, Esquire and after consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the partial motions for summary judgment filed by the defendant are granted as follows. Paragraph 175 subparagraphs A through C, G, N, S, V through Z, paragraph 177 subparagraphs A through M, O through Q. Paragraph 197 subparagraphs A through C, the portion of subparagraph F concerning defendant Ellwood City Hospital's failure to notify the decedent's family of his changes in condition, H through N, P through T, V, Y, AA through DD, FF, GG and paragraph 199 subparagraphs A through M,O through LL and NN through SS of the complaint are hereby stricken from the complaint and dismissed with prejudice.

2. The court enters summary judgment on the subparagraphs set forth above.

3. The prothonotary is directed to serve a copy of this order of court upon counsel of record.